**B. H. RHODES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42001.**

. Court of Criminal Appeals of Texas.

May 7, 1969.

Rehearing Denied June 11, 1969.

Cutler & Epps, by Ray Epps, Houston, for appellant.

Carol S. Vance, Dist. Atty., William W. Burge and Robert A. Markowitz, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for obtaining lodging and meals from a hotel in violation of Art. 1551(b), Vernon's Ann.P.C.; the punishment, three days in jail and a fine of $200.

Trial was had before the court without a jury.

It is contended that the trial court erred in refusing to quash the information for the reasons that the act in question is vague, ambiguous, and unconstitutional in that it permits imprisonment for debt.

Art. 1551(b), V.A.P.C., relied on for a conviction reads in part:

"It shall be unlawful for any person who has obtained lodging, meals or other lawful service at any hotel, motor hotel, inn, tourist court, or mobile home park to depart from the premises thereof with the intent not to pay for such services."

▪ From the statute, it is evident that the legislature intended to create and make it an offense for any person to depart from the premises of a hotel with the intent not to pay for the lodging and meals which he had obtained from said hotel. The provisions of the statute are sufficiently definite and certain to apprise any person of the nature and character of the act denounced, and said statute makes such act with said intent a penal offense.

▪ The statute does not violate Art. I, Section 18, of the Texas Constitution, Vernon's Ann.St. for the reason that it is not the non-payment of the services which is punishable, but it is the act of departure with the intent not to pay for such services which is denounced by the statute as an offense. Colin v. State, 145 Tex.Cr.R. 371, 168 S.W.2d 500; State v. Higgins, 67 Wash.2d 147, 406 P.2d 784, cert. denied, 385 U.S. 827, 87 S.Ct. 60, 17 L.Ed.2d 63.

Being drawn in the language of the statute, the information is valid.

The motion to quash the information was properly overruled.

The appellant contends that the evidence is insufficient to support the conviction.

While testifying, Sylvia Bell, the room clerk and cashier at the Towers Hotel, identified the appellant as the person who she registered for a room at the hotel, and who came to the office to check out several days later, on June 21, 1967. She further testified that she presented a bill to appellant for $198.75 for hotel services, which he

did not question or protest, and signed and gave her a check for the bill and departed.

Albert Nunley testified that he was general manager of the Towers Hotel and had subsequent to June 21, talked with the appellant by telephone. He testified in part as follows:

"Q  What were these conversations about?

"A  About the check, about the insufficient check, and he would say, 'I am going to get it to you Monday', 'I am going to get it to you Monday', and finally I couldn't get him, he wouldn't answer his phone."

He further testified in part as follows:

"Q  Once again look at State's Exhibit No. 1 (the check for $198.75). Have you seen that instrument before?

"A  Yes sir.

"Q  In what capacity sir?

"A  Well, it went to the bank and it was returned for insufficient funds."

C. M. Garner testified that he was in the security business and that in connection with his business the appellant's check for $198.75 had been placed with him for collection by the Towers Hotel. He further testified in part as follows:

"Q  Do you recall approximately when you received the account?

"A  I would say around the end of June.

"Q  Would it be safe to say that it would be at the end of June or early part of July that you talked to Mr. Rhodes?

"A  I believe so, yes sir.

"Q  At the time you talked to him and had your conversation with him about the divorce, did he tell you that at the time he was at The Towers he was in the process of a divorce?

"Mr. Epps:  Objection, he has asked that three (3) times and the man answered he couldn't answer that question.

"A  I can answer what he asked me then?

"Q  Mr. Garner, is it correct that the conversation with Mr. Rhodes took place the latter part of June or early part of July; is that right sir?

"A  To the best of my knowledge, yes sir.

"Q  With reference to his conversation about a divorce, do you recall at what point of time he was referring to; at the time you were talking or sometime prior to that time?

"A  During the conversation I had with Mr. Rhodes—we had a lengthy conversation and we discussed many things. Mr. Rhodes second honeymoon was at this time, when he incurred this bill.

"Q  He told you he was on his honeymoon at the time he was at the Towers?

"A  I believe so, and he very definitely left me with the impression that the reason that check was no good and the reason he was in no position to pay it at that time was because of his accounts being frozen on account of this divorce proceedings.

"Q  *Did Mr. Rhodes tell you whether or not he knew at the time he wrote the check marked State's Exhibit No. 1 that his account was frozen?*

"A  *Yes, that was the whole sum of the conversation, and the reason the check was 'insufficient' and why he couldn't do anything about it.* (Emphasis added)

"Mr. Markowitz:  I pass the witness.

RE-CROSS EXAMINATION

QUESTIONS BY MR. EPPS:

"Q Now Mr. Garner, I asked you on cross examination while ago if you knew what time you got the check and you said you didn't know?

"A I really don't know.

"Q You don't have a way of remembering that?

"A Yes, I have a way of remembering that, but I don't know if I can state that in this Court or not.

"Q And you testified that your impression was that Mr. Rhodes was on his second honeymoon at the time he was at the hotel?

"A I believe that was the substance of the conversation.

"Q He didn't tell you that at the time he wrote the check he was in a divorce process?

"A I didn't see him then.

"Q Whenever it may have been that you talked to him, did he tell you that at the time he wrote the check his divorce was in process?

"A Yes sir.

"Q At the time you talked to him it was in process?

"A He said that the final disposition of his assets had not been made and everything was frozen."

The appellant testified that he had been registered at the Towers Hotel for several days on June 21, 1967; that he did not personally check out that day, but sent his secretary with the check for $198.75 to check out; and that he had no protest to make about the account. He further testified in part as follows:

"Q What account was this check written on?

"A That was written on a special account of my ex-wife's.

"Q Your ex-wife's name is what?

"A Peggy L. Rhodes.

"Q Does that name appear on that check?

"A Yes sir.

"Q Did you have your wife's consent to write checks on that account?

"A Yes sir.

"Q And at the time you wrote it you thought the money was in there?

"A Yes."

The appellant also testified that he filed a suit for divorce in May, 1967, and then dismissed it; that his divorce suit was not on file on the date the check was written; that his wife filed a divorce suit in July; and that he knew the check had been returned to the hotel because of insufficient funds.

■ The trial judge, when sitting as the sole trier of the facts, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. He is authorized to accept or reject any or all of the testimony of the witnesses for either the state or the accused. 24 Tex. Jur.2d 395, Sec. 725; Miller v. State, Tex. Cr.App., 388 S.W.2d 186; Walker v. State, Tex.Cr.App., 395 S.W.2d 645; Barnes v. State, Tex.Cr.App., 407 S.W.2d 782; Courtney v. State, Tex.Cr.App., 424 S.W.2d 440; Stevens v. State, Tex.Cr.App., 426 S.W.2d 222.

■ The surrounding and attending facts and circumstances in evidence are sufficient to warrant the conclusion of the trial judge that the appellant was guilty as charged and supports the conviction.

The appellant also contends that:

"The Trial Court committed reversable and prejudicial error when it admitted into evidence the envelope which was

allegedly refused at the address of Mr. Bob H. Rhodes, but in truth and fact was refused from another address as per the face of the envelope."

State's Exhibit No. 2 is the envelope in question, and according to the record it was first mailed to appellant's business address on August 3, but it is marked refused August 4, at 2322 Blackmon Street. State's Exhibit No. 3 is the letter that was enclosed in the envelope and it was read in toto to the jury by the witness without objection. It refers to a previous letter to the appellant about the "insufficient check" of $198.75. In light of the contents of this letter no error is shown by the introduction of the envelope.

The judgment is affirmed.