Diane Marie MATTIAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 137–85.

Court of Criminal Appeals of Texas,
En Banc.

April 29, 1987.

J. Thomas Sullivan, Dallas, for appellant.

Henry Wade, Dist. Atty. & Michael J. Klein, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

On December 27, 1983, following a trial before the court on a plea of not guilty the appellant was found guilty of knowingly offering to engage in sexual conduct with another for a fee, a Class B misdemeanor. V.T.C.A., Penal Code, § 43.02(a)(1). The punishment was assessed at a $1.00 fine, probated, for one day.

Relying upon the trial judge's findings of fact and conclusions of law, made upon the request of the appellant, the Court of Appeals reversed the conviction upon the basis of insufficiency of the evidence and ordered an acquittal. The Court of Appeals held:

"Although it is clear that the appellant said the words, we hold that the finding by the court that she never intended to commit a sexual act and that the words

were said in an attempt to find a way out of the apartment negated a culpable mental state of 'knowingly' offering or agreeing to engage in sexual conduct. Therefore, the trial court's finding that she never intended to consummate the contract is in conflict with, and does not support, her conviction of the offense of prostitution. The judgment of conviction is reversed and an acquittal entered. *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978)." *Mattias v. State*, 683 S.W.2d 789 (Tex.App.—Eastland 1984).

We granted the State's petition for discretionary review to determine 1) whether intent to consummate an offer is an element of the offense of knowingly offering to engage in sexual conduct for a fee under V.T.C.A., Penal Code, § 43.02(a)(1), and 2) whether in basing its decision upon the trial judge's findings of fact and conclusions of law the Court of Appeals erred in sanctioning a departure from the accepted procedure in criminal cases.

V.T.C.A., Penal Code, § 43.02(a)(1), provides:

"(a) A person commits an offense if he knowingly

"(1) offers to engage, agrees to engage or engages in sexual conduct for a fee." [1]

As can be seen three modes of the offense are set forth in the statute. "Each act is disjunctive." *West v. State*, 626 S.W.2d 159, 160 (Tex.App.—Beaumont 1981, pet. ref'd).

The information charged, in pertinent part, that appellant on or about August 5, 1983, "did unlawfully then and there knowingly offer to and agree with E.W. Smith, hereinafter styled Complainant, to engage in sexual conduct, to wit: deviate sexual intercourse, with complainant for a fee...."

The information charged the appellant with the first two modes "offer to and agree ... to engage in sexual conduct ..." in the conjunction. The elements of the offense charged are

(1) a person

(2) knowingly

(3) offers to engage or agree to engage

(4) in sexual conduct

(5) for a fee (payable to actor).[2]

See Texas Anno. Penal Statutes, Branch's 3rd Ed., Vol. Three, § 43.02, p. 225.

■ A plain reading of the statute reveals that the particular offense charged is not a specific intent or result-type offense. See generally, Searcy and Patterson, Practice Commentary, V.T.C.A., Penal Code, § 6.03. A person may knowingly offer to engage in or agree to engage in sexual conduct for a fee and commit an offense under § 43.02(a)(1), supra, without having the intent to actually consummate the sexual conduct. In *Cardenas v. State*, 640 S.W.2d 291 (Tex.Cr.App.1982), this Court wrote, "The intent that must accompany future sexual contact need not accompany the offer or agreement to engage in sexual conduct." We hold that intent to consummate an offer or agreement to engage in sexual conduct is not an element of the offense of prostitution under § 43.02(a)(1), as charged in the information.

The record shows that Dallas Police Officer Emerson Smith of the Vice Division testified that on August 5, 1983, he "borrowed" a condominium. His partner, Officer Glenda Hoffman, called the Christy's Escort Service from a nearby apartment, and in response to said call the appellant and Marie Waterman appeared at the "borrowed" condominium. Smith got a beer for the appellant. After the undercover officers were told that there would be a $65.00 agency fee for each of them, Hoff-

---

1. V.T.C.A., Penal Code, § 43.01(4), provides:

"(4) 'Sexual conduct' includes deviate sexual intercourse, sexual contact, and sexual intercourse."

2. The State may charge one or more modes or phases of the offense in the conjunctive in one count and proof of either will authorize the conviction. *West v. State*, supra; *Hutchins v. State*, 426 S.W.2d 235 (Tex.Cr.App.1968).

man, according to Smith, told Waterman she wanted Waterman to "go down" on her, and Waterman said that would be $200.00 extra. Smith said he told the appellant he wanted a "head job," which he described as deviate sexual intercourse, and she told him "that would be $250.00." The women were arrested. Officer Hoffman corroborated Smith's testimony. Waterman testified for the State.

Appellant testified that she had taken the job with the agency to do nude and lingerie modeling after she moved to Dallas and didn't get the job she had expected to obtain. She related that before the alleged offense she had one lingerie modeling job and on three other occasions when the customers requested sex she had left. On the date in question she had gone with Waterman, who had previously worked for the agency and had told her about possible employment there. Upon arriving at the location, appellant testified that she felt unsafe, that there were beer cans around the room, the telephone was out of order or not connected. She stated Waterman repeatedly asked to use a phone to let the agency know they had arrived, but that Smith kept telling her he would take her to an available phone in a nearby apartment in a few minutes. Appellant admitted she told Smith her fee was $250.00 for a "head job" but she did so in hopes that it would be so high they could "get out of there." Appellant stated she had no intention of actually engaging in sexual conduct or of ever "giving a head job."

In argument following the guilt stage of the trial appellant's counsel argued that it was "clear from her background and what she told you she was not ever, did not ever intend to commit prostitution, an act of prostitution on this occasion or any occasion.

"THE COURT: Counsel, does intent matter?

"MR. McCOLLUM: It certainly does. She must have intended what she said.

"THE COURT: That isn't what the act says, is it?

"MR. McCOLLUM: Yes, it is, Your Honor. . . .

"THE COURT: I find she made the offer.

"MR. McCOLLUM: What the technicality?

"THE COURT: I probably agree with you that it shows a lack of intent. I don't find that's necessary."

The judgment entered found the appellant guilty of offering to engage in sexual conduct with another in return for a fee.

The amended motion for new trial reurged the argument advanced at trial. Appellant contended the court erred in finding that since she knew what she was saying and it was to make someone else think she wanted to commit an act of prostitution she was guilty even though her intent was not to commit an act of prostitution. Although there is no statement of facts of any hearing on the said motion, the docket sheet indicates the said motion for new trial was overruled on March 10, 1984. On the same date the court signed the following instrument apparently prepared by appellant's counsel.

"FINDINGS OF FACT AND CONCLUSIONS OF LAW

"Comes now the trial court in the above-styled and numbered cause and pursuant to a motion by defense, enters the following findings of fact and conclusions of law.

"1.) The conversation regarding sexual contact was initiated by the male police officer.

"2.) That the defendant in an attempt to find a way out of the apartment replied, 'I get two-fifty for that.'

"3.) The defendant intended to convey to the officer that a contract was made so that she could get to use the telephone although the defendant never intended to consummate the contract committing the sexual act.

"Since the crime of prostitution requries (sic) an individual to *knowingly* offer to engage or agree to engage in sexual

contact for a fee the Court finds the defendant guilty.

"The Court specifically finds that the intent of the defendant to convey a contract had been entered into even absent the intent to fulfill the act met the 'knowingly' requirement."

It was upon these "findings" the Court of Appeals relied. In *Morris v. State*, 73 Tex.Cr.R. 67, 163 S.W. 709 (1914), it was held that where a criminal prosecution is tried by the court without a jury, the court is *not* authorized to file findings of fact and conclusions of law as in a civil case. In *Kaspar v. State*, 376 S.W.2d 358, 359 (Tex.Cr.App.1964), and *Guadian v. State*, 420 S.W.2d 949, 952 (Tex.Cr.App.1967), it was held that the procedure here employed of the trial judge in a criminal case making findings of fact and conclusions of law as to the sufficiency of the evidence "is not authorized by the law of this state" and "not provided for in the Texas Code of Criminal Procedure." In *Kadlec v. State*, 704 S.W.2d 526 (Tex.App.–Dallas 1986), PDR ref'd, it was held that Rule 296, Texas Rules of Civil Procedure, which requires the trial court to make findings of fact and conclusions of law in a civil case tried without a jury, is not a common law rule applicable to criminal cases pursuant to Article 1.27, V.A.C.C.P. In *Kaspar, Guadian* and *Kadlec* it was held that the trial judge did not err in refusing to make findings of fact and conclusions of law.

Rule 296 provides:

"In any case tried in the district or county court without a jury, the judge shall, at the request of either party, state in writing his findings of fact and conclusions of law. Such request shall be filed within ten days after the final judgment is signed. Notice of the filing of the request shall be served on the opposite party as provided in Rule 21a."

Rule 299, Texas Rules of Civil Procedure, provides:

"Where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumption of finding upon any ground of recovery or defense, no element of which has been found by the trial court; but where one or more elements thereof have been found by the trial court, omitted unrequested elements, where supported by presumption in support of the judgment. Refusal of the court to make a finding requested shall be renewable on appeal." See also Rules 297, 298, 300 and 301, Texas Rules of Civil Procedure; *Block v. Waters*, 564 S.W.2d 113, 115 (Tex.Civ.App.–Beaumont 1978).

In the instant case the trial judge did not refuse to enter the requested "findings" as in *Kaspar, Guadian* and *Kadlec*, supra. Here the unauthorized practice was used and the trial judge signed the same. There was no showing that there was compliance with the notice requirement of said Rule 296, but the appellant does not cite such rule and neither did the Court of Appeals. *Mattias v. State* (683 S.W.2d 789), supra. What effect do these "findings" have in determining the sufficiency of the evidence to sustain a criminal conviction in a bench trial?

Generally the "verdict [of the jury]" [3] in every criminal action must be general. Article 37.07, § 1(a), V.A.C.C.P. See, however, Article 37.071, V.A.C.C.P. The judgment of the court in a criminal case, like the verdict of the jury, must be a general one, although there is no specific statutory provision.

The proper standard of review where the sufficiency of the evidence to sustain the conviction is challenged is "After viewing the *evidence* in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

---

**3.** Article 37.01, V.A.C.C.P., provides:

"A 'verdict' is a written declaration by a jury of its decision of the issue submitted to it in the case."

the crime beyond a reasonable doubt." *Jackson v. Virgina,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Emphasis supplied); *Carlsen v. State,* 654 S.W.2d 444, 448 (Tex.Cr.App.1983) (Opinion on State's Motion for Rehearing); *Freeman v. State,* 654 S.W.2d 450, 456 (Tex.Cr.App.1983) (Opinion on State's Motion for Rehearing); *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983); *Thompson v. State,* 697 S.W.2d 413 (Tex.Cr.App.1985).

■ Examining the statement of facts before the trial court, we find that the evidence therein is sufficient to support the conviction using the "rational trier of fact" test of *Jackson v. Virginia,* supra. Intent to consummate the sexual conduct is not an element of the offense charged in the information. As appellant admits in her brief, there are no real factual inconsistencies between the State and defense witnesses, including appellant's own testimony as to the "offer." Further, State's witnesses made out the elements of the offense including the culpable mental state of knowing. See V.T.C.A., Penal Code, § 6.03.

The trial judge, when sitting as the sole trier of facts, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. He is authorized to accept or reject any or all of the testimony of the witnesses for either the State or the accused. See *Powell v. State,* 479 S.W.2d 685 (Tex.Cr.App.1972); *Aldridge v. State,* 482 S.W.2d 171, 172 (Tex.Cr.App.1972), and cases there cited; *Limuel v. State,* 568 S.W.2d 309 (Tex.Cr.App.1978); *Johnson v. State,* 571 S.W.2d 170 (Tex.Cr.App.1978); *Flanagan v. State,* 675 S.W.2d 734, 746 (Tex.Cr.App.1984) (Opinion on rehearing). See also *Rhodes v. State,* 441 S.W.2d 197 (Tex.Cr.App.1969), and cases there cited.

In *Porter v. State,* 388 S.W.2d 422, 423 (Tex.Cr.App.1965), it was pointed out that the trial judge as the trier of the facts

"was not required to believe the defendant's testimony as to his reason for carrying the pistol, even if it is not controverted (citations omitted)."

Likewise in the instant case the trial judge was not required to believe the appellant's version of why she made the offer to engage in sexual conduct for $250.00. It is obvious that in finding the appellant guilty the trial judge rejected appellant's in-court explanation as to her actions in making the "offer" and rejected any defense she advanced. The judgment of guilt was entered by the court who also subsequently overruled the motion for new trial. Even in the said "findings and conclusions" it was stated, "Since the crime of prostitution requires an individual to *knowingly* offer to engage or agree to engage in sexual contact (sic) for a fee the Court finds the defendant guilty." (Emphasis supplied.)

It is observed that the Court of Appeals eliminated in its opinion the above phrase in setting the "findings and conclusions." [4]

The appellant seems to basically argue that the judge was the trier of facts, and while the evidence might support the judgment of conviction without more, the "findings and conclusions" showed the judge believed her and therefore he could not have found the essential element of "knowing" beyond a reasonable doubt.

■ Keeping in mind that we have held that intent to actually consummate the sexual conduct is not an element of the offense charged, and reading the "findings and conclusions" in their entirety, there is not as much conflict with the judgment of conviction as appellant claims. Nevertheless, we find the unauthorized "findings and conclusions" insofar as they are in conflict with the judgment and the evidence supporting the same are not controlling. The Court of Appeals erred in using such "findings and conclusions" or parts thereof

---

**4.** From the markings on the appellate record the deletion from the quotation appears to have been purposeful.

in testing the sufficiency of the evidence.[5] We answer the first ground of review in the negative and the second ground of review in the affirmative.

We also reject appellant's argument that this Court is bound by the Court of Appeals' finding, based on the said "findings and conclusions," that the evidence is insufficient to sustain the conviction. See *Combs v. State*, 643 S.W.2d 709 (Tex.Cr. App.1982).

The judgment of the Court of Appeals is reversed[6] and the cause is remanded to the Court of Appeals for consideration of appellant's other points of error.

MILLER, J., concurs in the result.

TEAGUE, J., dissents.

CLINTON, Judge, dissenting.

The offense is a species of prostitution denounced by V.T.C.A. Penal Code, § 43.-02(a)(1); it is committed when one *"knowingly offers* to engage" in sexual conduct (alleged here to be deviate sexual intercourse) for a fee.[1]

The majority opinion says, "A plain reading of the statute reveals that the particu-

lar offense charged is not a specific intent or result-type offense." At 937. Since the requisite culpable mental state is "knowingly," that reading rules out acting knowingly "with respect to a result of [one's] conduct," leaving acting knowingly "with respect to the nature of [one's] conduct or to circumstances surrounding [one's] conduct." *Id.*, § 6.03(b). As defined the offense does not implicate circumstances surrounding conduct; it goes to nature of that conduct. Thus the State had to prove that appellant was "aware of the nature of [her] conduct." *Ibid.*

Since the majority now reverses the judgment of the court of appeals for going about it all wrong in finding against the State, the Court would ordinarily remand for a fresh determination of sufficiency of the evidence.[2] But it does not, so alon'.

According to the short scenario written in the majority opinion, one officer "told appellant he wanted a 'head job,' " and appellant replied "that would be $250.00." Without further ado arrests were made. At 938.

So, the question is whether her responding by merely stating a price ("nature of conduct") is enough to show appellant was aware that she was making an offer to

---

5. It is obvious that in reciting the evidence in its opinion the Court of Appeals did not view the same "in the light most favorable to the prosecution." *Jackson v. Virginia,* supra.

6. The Court of Appeals' opinion is in error in referring to the conviction "knowingly agreeing to engage in sexual conduct." The trial court's judgment reflects the conviction was for knowingly offering to engage in sexual conduct.

1. The judgment recites that appellant "be punished by a *fine of $1.00* and by *confinement for none* in the Dallas County Jail," and later on she is placed on probation "for a period of *1 day from this date,* and then given thirty-five days to pay the one dollar fine. Thus, though he found her guilty, the trial judge provided meaningful insight as to his real evaluation of this prosecution." (All emphasis is mine unless otherwise noted.)

2. Addressing the only two reasons for review, cast by the State as "grounds for review," at 936 –937, the majority holds that the court of appeals erred in testing sufficiency of the evidence

by testimony and a finding that appellant "never *intended* to commit a sexual act," and in using "findings and conclusions" of the trial court for that purpose at all. At 937 and 940–941, respectively. Accordingly, having reviewed those two "grounds," it reverses the judgment of the court of appeals, thereby granting *all* the relief for which the State prays in its PDR. Because the State did not present a ground for review in its PDR that the evidence is sufficient, that issue is not before the Court. *Funderburg v. State,* 717 S.W.2d 637, 640–641, n. 3 (Tex.Cr. App.1986). Therefore, the proper judgment here is to remand the cause to the court of appeals for it to review sufficiency under what the majority says is the correct standard. Instead, the majority makes its own examination of record evidence and, finding the evidence sufficient, directly affirms the judgment of the trial court. To its providing *sua sponte* that inappropriate remedy, I respectfully dissent. Appellant is entitled to rebrief and the Eastland Court to an opportunity to reconsider sufficiency in the light the majority says is right.

engage in deviate sexual intercourse, as alleged. Her testimony is to the effect that she was not. The majority must believe that simply quoting a price of something is an "offer." It cites no authority. At 940.

As the law has been developing, our past panel decisions require more, i.e., an inviting query coupled with suggestive bodily movements by accused, *Morris v. State*, 565 S.W.2d 534 (Tex.Cr.App.1978); an explicit proposal, *Iles v. State*, 637 S.W.2d 940 (Tex.Cr.App.1982); or, *when complainant initiates the encounter*, "protracted 'negotiations,' in which implied offers were made by both [parties]." *McCarty v. State*, 616 S.W.2d 194, 197 (Tex.Cr.App.1981); *Robinson v. State*, 643 S.W.2d 141, 142–143 (Tex. Cr.App.1982). See *Thornberg v. State*, 655 S.W.2d 239, 241 (Tex.App.—Houston [14th] 1983).

*Ozack v. State*, 646 S.W.2d 941 (Tex.Cr. App.1983), is the first en banc opinion of this Court on the point, and it is not unanimous. The *Ozack* majority professed to find "the reasoning of *McCarty*, supra, controlling," *id.*, at 943, and, dropping "protracted" from the formulation, still found verbal exchanges about doing acts of deviate sexual intercourse and an expressed agreeableness on the part of accused to do them constituted "'negotiations,' in which implied offers were made by both appellant and the [officer]." *Ibid.*[3]

Adhering to views expressed in the margin, I would find that a person merely quoting a price in response to being "told" what a complainant undercover officer "wanted" is not enough to show knowingly offering to engage in deviate sexual intercourse.

It is certainly true that, resolving a different issue presented, the Court wrote in *Cardenas v. State*, 640 S.W.2d 291 (Tex.Cr. App.1982): "The intent that must accompany future sexual *contact* need not accompany the offer or agreement to engage in sexual *conduct*." However, the reason "intent" need not accompany an offer to engage in deviate sexual intercourse is that, unlike "sexual contact," the definition of deviate sexual intercourse does not include an "intent" element—indeed, it does not require any culpable mental state. That is left to the definition of a particular offense involving deviate sexual intercourse.

From my reading of the opinion below, *Mattias v. State*, 683 S.W.2d 789 (Tex.App. —Eastland 1984), the court did *not* hold that "intent to consummate an offer is an element of the offense of knowingly offering to engage in sexual conduct for a fee under ... § 43.02(a)(1)," at 937. The majority is persuaded the court did so hold, and erroneously at that. At 937. However, that "intent to consummate" is not an *element* of the offense does not *ipso facto* rule out relevant *evidence* of intent. Surely an indication that a person "knowingly offer[ed] to engage in deviate sexual intercourse" would be strengthened or weakened by other evidence that the "offeror" did or did not intend to consummate an alleged offer. An intent to consummate leaves little doubt that the offeror is aware of having made an offer to engage in deviate sexual intercourse. In some circumstances a contrary intent might raise a doubt. In my judgment, the Eastland Court was reasoning along those lines, by reiterating that factually appellant "never

3. Against that finding this writer dissented [omitting footnotes], *viz:*

"The meaning of 'offer,' not defined in the Penal Code, apparently has not acquired a technical or particular meaning even on the civil side. Thus, we are directed by the Code Construction Act ... to read the word in context and construe it according to rules of common usage. Clearly, in context 'offers to engage' is intend to mean something other than 'agrees to engage, or engages' in sexual

conduct, and in view of the express provision of § 43.02(a)(2) is not to mean 'solicits another' to engage in sexual conduct. [After some nuances are excluded by its context,] [w]hatever the remaining reach of 'offer,' that which is shown to have occurred here is not within it. While appellant said she was 'agreeable' to half and half prostitution, still by all accounts she was responding to the initiative of Officer Hill."

intended" to commit a sexual act et cetera. *Mattias,* supra, at 790–791.

Here, in words actually spoken, the "offer" is ambiguous at best; absent are "protracted negotiations" looking to a bargain, and there are no other indicia of "implied offers." The essential ingredients of *Ozack* are missing. Evidence of an intent not to consummate seems especially germane in these circumstances. Yet, the majority seems to ignore it.[4]

While "the trial judge was not required to believe appellant's version," at 940, in the findings made for the trial court the trial judge manifested his acceptance of her "version" as a matter of fact, but rejected it as a matter of law. The unique "punishment" imposed clearly reflects he was not happy at his work.

For reasons respectively given, since the cause is not to be remanded for further proceedings, I would affirm the judgment, and because the majority does neither, I dissent.

McCORMICK, J., joins.

---

**4.** The majority is too busy lecturing the trial court and the court of appeals that making findings of fact and conclusions of law is an "unauthorized practice." At 938–939. Yet, in the very first case cited by the majority for holding they are not authorized to be filed, the Court nonetheless "read these conclusions, because they furnish us *the basis upon which the court adjudged appellant guilty;*" thereby informed, the Court found error and reversed the conviction. *Morris v. State,* 73 Tex.Cr.R. 67, 163 S.W. 709, 710 (1914). Thus findings of fact and conclusions of law do serve a purpose, the trial court is not prohibited from making them and, as an appellant is so often admonished, the State did not object. Judicially erected, such an archaic impediment to ascertaining the true basis on which a trial court finds guilt ought to be similarly removed. I would not fault the court of appeals for doing precisely what the Court did in *Morris v. State,* supra.