

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-12-00065-CR

---

BILLY JOE SMITH, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 0518102

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

## I.      Factual and Procedural Background

Billy Joe Smith pled guilty to the offense of aggravated sexual assault of a child and was placed on deferred adjudication community supervision. One of the conditions of community supervision was that he "shall not be in the direct presence or have any personal contact with any person under the age of 17 unless approved by the Court." The State filed a motion for adjudication and revocation alleging that Smith failed to pay fees, fines, and costs assessed as part of his supervision and that he violated the terms and conditions of his supervision by being in the direct presence of or having personal contact with children. The trial court found the allegations true, adjudicated him guilty, and sentenced him to life in prison.

## II.      Standard of Review

We will review the trial court's decision to revoke community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). The trial court does not abuse its discretion if the order revoking community supervision is supported by a preponderance of the evidence, or, in other words, if the greater weight of the credible evidence would create a reasonable belief that the defendant has violated a condition of his or her community supervision. *Rickels*, 202 S.W.3d at 763–64; *T.R.S.*, 115 S.W.3d at 320. In conducting our review, we view the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *T.R.S.*, 115 S.W.3d at 321. If a single ground for revocation is supported by a preponderance of the evidence and is otherwise valid,

then an abuse of discretion is not shown. *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); *T.R.S.*, 115 S.W.3d at 321 (citing *Stevens v. State*, 900 S.W.2d 348, 351 (Tex. App.—Texarkana 1995, pet. ref'd)). In a community supervision revocation hearing, the trial court is the sole trier of fact and determines the credibility of the witnesses and the weight to be given their testimony. *Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). The court may accept or reject any or all of the witness' testimony. *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987). The State is required to sustain the burden of proving the allegations of the motion to revoke probation." *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974).

## III. Direct Presence of Children

In Smith's case, the State made three allegations that Smith had been in the presence of children.[1] Joseph Flemens, the community supervision officer who oversaw Smith's case, testified that Smith acknowledged to Flemens that on or about June 23, 2010, Smith went to a home to discuss buying hay. Smith told Flemens the man of the house was not home, so Smith had to discuss the hay with the man's wife; she did not speak English, so Smith was left with no option but to talk to the woman's son, who acted as translator. Smith told Flemens he only spoke to the boy "a couple of minutes," and although Smith did not know the boy's age, he told Flemens the boy was under the age of seventeen.

---

[1]The State alleged (1) that on or about June 23, 2010, Smith was in the direct presence of or had personal contact with a person younger than seventeen when he had a conversation with a hay-seller's son, (2) that on or about July 27, 2011, Smith was in the direct presence of his great-grandchildren, and (3) that on or about July 27, 2011, Smith was in the direct presence of children when Smith visited one of his rental properties.

Two other allegations that Smith had been in the presence of his great-grandchildren were supported by evidence. Smith made this statement to polygraph examiner Bobby Jones:

> [Smith] stated he heard they [the great-grandchildren] were coming [to Smith's home] to visit and he stayed behind so he could see them when they got there because he had never seen them. He stated as they came in he stayed with them for about 30 seconds and visited and then left. He denied touching them or being alone with them. He stated his wife and other adults were present when this occurred.

Smith's daughter-in-law, Becky Smith, the grandmother of the great-grandchildren, testified she and her step-daughter, Megan Smith, went to the home of Smith and his wife. Becky said Smith was not present; she, Meagan, the children, and about three other adults sat and visited with Smith's wife. Becky said Smith was not present, but at some point, did enter the room. According to Becky, Smith said he could not be around kids and left. She said Smith was in the room "[m]aybe a minute. I think he said, 'Meagan, you sure have grown up,' and 'I can't be around kids,' and he left." Becky said Smith did not hold or touch the children.

Additionally, Flemens testified Smith told him that on one occasion, Smith had been showing a rental house to prospective renters who had a two-year-old daughter with them.

## IV. Analysis

Smith's brief offers no statutory authority or caselaw to support his assertion that the State failed to prove the three allegations regarding being in the presence of children. His argument is that in all situations, Smith was in proximity to the respective children only as long as necessary—to ask the Spanish-speaking boy when his father would return, to see his great-grandchildren, and to show the rental property. He claims he did not "initiate any of these contacts," which were all "unexpected," and "minimal in quality and duration." Smith points out

4

there is no evidence he was ever alone with a child, notes the brevity of each contact, and claims he removed himself from the presence of children as soon as he could. These factors establish, according to Smith, that the evidence is insufficient to support revocation.[2]

First, we disagree to some extent with Smith's characterization of the events above. He could have left the hay-seller's house without speaking to the child; likewise, Smith could have excused himself from showing the rental property. According to Jones' account of Smith's statement, Smith said he "stayed behind" to see his great-grandchildren when he knew they were coming; thus, rather than removing himself from the presence of children as quickly as possible, he took steps to place himself in the presence of children in that situation.

Second, we find very instructive the Texas Court of Criminal Appeals opinion in *Rickels*. The trial court revoked Rickels' community supervision based on the allegation he violated the condition of his supervision prohibiting his being within 300 feet of any area where children gathered or congregated. *Rickels*, 202 S.W.3d at 760. Rickels rented and occupied a house, and all or part of the property was within 300 feet of an elementary school; the record, thus, supported an inference that at some point, Rickels had been within the zone forbidden by the conditions of his supervision. *Id.* at 764.

At issue here is whether the trial court abused its discretion in finding, by a preponderance of the evidence, that Smith was in the direct presence of or had personal contact with children under the age of seventeen, as alleged by the State. Smith does not contest being in

_____

[2]The State requested and was granted an extension for its briefing until December 7, 2012, but has failed to file a brief even now. It is the duty of the State to "represent the State in all criminal cases in the district courts of his district and in appeals therefrom . . . ." TEX. CODE CRIM. PROC. ANN. art. 2.01 (West 2005). Since the State's brief is now more than thirty days late with no further request for extension, we assume the State has no intention of filing a brief and we must proceed without any State response.

the presence of the children described. Whether we would have found the events at issue to have warranted revocation is immaterial. This condition of supervision has no requirement of a specific mens rea or the duration of the presence or contact. *See Cano v. State*, No. 01-00-01210-CR, 2001 Tex. App. LEXIS 6446, at *3 (Tex. App.—Houston [1st Dist.] Sept. 20, 2001, no pet.) (mem. op., not designated for publication) (State had no duty to prove voluntary or intentional conduct because motion sought to revoke for failure to report).[3] A trial court abuses its discretion when it "so deviates from applicable guidelines and principles that the decision falls outside the zone of reasonable disagreement." *Breakiron v. State*, 79 S.W.3d 103, 107 (Tex. App.—Texarkana 2002, no pet.) (citing *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001)). If the State presents sufficient evidence to prove all the elements of even a single violation of community supervision, as alleged in its motion to revoke, then the trial court has sufficient cause to revoke that community supervision. *Watts v. State*, 645 S.W.2d 461, 463 (Tex. Crim. App. [Panel Op.] 1983). Thus, we cannot say the trial court abused its discretion in finding true the final three allegations, that Smith violated the terms of his supervision by being in the direct presence of or having personal contact with children.

Because there was sufficient evidence to support the allegations of being in the presence of children, we need not address Smith's claim that the State failed to prove Smith willfully did not pay certain fees and fines assessed as part of his community supervision.

---

[3]*Cano* has no precedential value, but may be cited with proper notation. TEX. R. APP. P. 47.7(a). We may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

We affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:     January 10, 2013
Date Decided:      January 23, 2013

Do Not Publish