**Opinion filed October 16, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00318-CR

_____

## BRUCE TODD BENSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**

**Stonewall County, Texas**

**Trial Court Cause No. 1885**

## M E M O R A N D U M   O P I N I O N

The trial court convicted Bruce Todd Benson of aggravated assault with a deadly weapon and assessed his punishment at confinement for a term of five years. *See* TEX. PENAL CODE ANN. § 22.02 (West 2011). In his first issue on appeal, Appellant challenges the sufficiency of the evidence to support his conviction. In his second issue, he argues that his defense of self and defense of

property theories were conclusively established. Because we disagree with both arguments, we affirm.

As the basis for his first issue on appeal, Appellant argues that the evidence was insufficient to support his conviction for aggravated assault with a deadly weapon because there was insufficient evidence that he intentionally threatened the victim with imminent bodily injury by pointing a handgun at him. Appellant argues in his second issue that the evidence that supports his defensive claims conclusively establishes that he was defending himself and his property and that the trier of fact could not have found against him on his defensive theories beyond a reasonable doubt.

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In determining whether the evidence is sufficient to support a conviction when a defensive theory is raised, we also look to whether any rational trier of fact could have found against the defendant on his defensive theory beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The State is not required to disprove a defensive theory when it is raised by the defendant; it must only prove its case beyond a reasonable doubt. *Id.* at 913–14. When the trier of fact finds the defendant guilty, it has impliedly found against the defendant on his defensive theory. *Id.* at 914.

The complainant, Richard Burton Weeks, Jr., testified that he was a truck driver and that he hauled cattle for a living. He said that he preferred to haul cattle at night. In the early morning hours during which this offense was committed, Weeks was making one of those nighttime trips and, about 5:00 a.m., pulled into the parking lot of Appellant's liquor store. He pulled in there so that he could review his maps for directions to his destination. The liquor store was closed. He checked his map and then got out and checked the truck and cattle. Weeks testified that he did not leave the immediate vicinity of his truck. He did not go to the liquor store or to the trailer house next to the liquor store. He estimated that he was only out of his truck for eight minutes.

When Weeks got back in his truck and was preparing to drive away, Appellant burst through the door of the trailer house, ran over to Weeks's truck, opened the door to the truck, and "crammed" a pistol in Weeks's side. Weeks tried to explain to Appellant what he was doing, but Appellant kept yelling and cussing at him as he continued to point the pistol into Weeks's side. At least twice during this confrontation, Appellant slammed the truck door shut, causing damage to the door. Appellant eventually went back inside the trailer house. When Appellant went back inside the trailer house, Weeks drove away; he later reported the incident to the sheriff's department.

Sheriff Bill Mullen of the Stonewall County Sheriff's Department testified that Weeks came to the sheriff's office at approximately 8:30 a.m. to report the incident. Although Sheriff Mullen agreed that there had been several reports of mischief, vandalism, and robbery at the liquor store in the past, he said that Appellant never reported this particular incident to the sheriff's office. Sheriff Mullen spoke with someone from the body shop where Weeks took his truck for an estimate, and he received a copy of the estimate from the body shop. He did not know whether the estimate was sworn to and did not have pictures of the damage

3

done to the truck because the pictures got lost when he sent them to Wal-Mart to be developed.

Appellant testified that he owned the liquor store at which Weeks stopped and that he also lived in the trailer house at that location. He said that his business had been broken into "dozens and dozens of times" and that one of his employees had been physically assaulted in the past. On the morning of this particular incident, Appellant said that he was awakened at 4:01 a.m. by the sound of his dogs barking. He heard a loud diesel engine and assumed that someone had pulled up to his property but that the person would leave. The person did not leave, and the alarm to Appellant's liquor store started going off as a result of the motion detector being triggered. Appellant believed that someone was inside his liquor store, and he was afraid that the person was going to steal everything. He got dressed, grabbed his handgun, and went outside. Once outside, Appellant saw Weeks do something to the door of the liquor store and then walk back to his truck. Appellant checked the front of the liquor store and found that the front door was loose, like "[i]t had been shaken a little bit loose." There was no broken glass.

After Appellant checked the front of the liquor store, he started walking back to his house. When Weeks continued to sit in his truck and did not leave, Appellant made a hand motion to tell Weeks to leave. Weeks did not comply, and Appellant walked out to the truck, motioned for Weeks to roll down his window, and told Weeks that he was on private property and that he needed to leave. Appellant testified that, as he was walking back to his house, Weeks "jumped out of the truck, threw the door open, come after me, and starts yelling, 'Open, open.'" Appellant told him that the store was closed and that he needed to "[g]et out of here." Appellant was carrying a pistol in his right hand for protection but did not point the pistol at Weeks, nor did he touch Weeks or threaten him with the pistol. Weeks got back in his truck and was still yelling, "Open, open." Appellant shut

4

the door to the truck and again told him to leave. He did not try to pull Weeks out of the truck.

Appellant testified that, during the encounter, he was in fear for his personal safety and security, as well as the safety and security of his personal property. Appellant believed that Weeks was attempting to commit a burglary or a theft because the alarms were going off at the liquor store. He said that Weeks had no right to be on his property and that he carried a pistol outside because he was afraid for his life. Appellant testified that he did not call 9-1-1 because he "knew it would do no good to call the sheriff, because it never has done any good."

The State recalled Weeks after the defense rested. Weeks testified that he did not attempt to enter the liquor store and that he did not even go near the door of the store.

Defense counsel argued that the trial court should find Appellant not guilty because he was acting in self-defense or in defense of his property. The trial court declined to do so and found Appellant guilty of aggravated assault with a deadly weapon. One of the ways in which a person can commit the offense of aggravated assault is by intentionally or knowingly threatening another with imminent bodily injury and by using or exhibiting a deadly weapon during such threat. *See* PENAL § 22.01 (West Supp. 2014), § 22.02. A firearm is a deadly weapon per se. *Id.* § 1.07(a)(17)(A).

Here, Weeks testified that Appellant shoved a gun into his side and was yelling and cussing at him. He also testified that he did not leave the immediate vicinity of his truck and that he never went up to the door of the liquor store. Weeks reported the incident to the sheriff's department shortly after it occurred. Appellant argues that the evidence is insufficient to show that he pointed a gun at Weeks because he testified that he never pointed the gun at Weeks or threatened him with the gun and that he never even touched Weeks. Appellant also argues

5

that the evidence shows that Weeks was trespassing on Appellant's private property and that Appellant was defending himself and his property during the encounter. Although Appellant testified to a different version of events than Weeks, the trial court, as the trier of fact, was the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *See Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987). As such, the court was entitled to accept or reject any or all of the testimony of any witness. *Id.* We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant intentionally or knowingly threatened Weeks with imminent bodily injury while using or exhibiting a deadly weapon. We also hold that a rational trier of fact could have rejected Appellant's testimony and found against him on his claims of self-defense and defense of property. We overrule Appellant's first and second issues on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


October 16, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

6