NUMBER 13-09-00131-CR


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

IPOLITO VINTON, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 105th District Court 

of Kleberg County, Texas.

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Garza


 A jury convicted appellant Ipolito Vinton (1) of possession of less than one gram of
cocaine, a state jail felony, on February 9, 2009. See Tex. Health & Safety Code Ann.
§ 481.115(a), (b) (Vernon Supp. 2009). The trial judge sentenced Vinton to confinement
in a state facility for a term of two years and also ordered a fine of $1,000.00. See Tex.
Penal Code Ann. § 12.35 (Vernon Supp. 2009). By one issue, Vinton challenges the legal
and factual sufficiency of the evidence used to convict him. We affirm. 

I. Background

 On March 29, 2008, Sergeant Bradley Lile and Detective Sandra Ochoa of the
Kingsville Police Department Detective Division were on night patrol in an unmarked
vehicle. While driving past the Day & Night Club, located on 7th Street and Santa
Gertrudis Street in Kingsville, the detectives noticed Vinton and another male looking up
and down 7th Street in a "suspicious" manner. The detectives continued to patrol the area
and next saw Vinton and his companion in an alleyway behind the Day & Night Club. 
When they realized that appellant and his companion were still in the alleyway on their third
drive-by, the detectives decided to investigate. Sergeant Lile parked the unmarked vehicle
while Detective Ochoa radioed back to dispatch to confirm that they were stopping. Both
of the detectives were dressed in black t-shirts labeled with the word "POLICE" in front in
white letters, had their official police department badges displayed, and had weapons on
their hips. 

A. The State's Evidence

 The State's first witness was Detective Ochoa. Detective Ochoa recalled that the
alleyway where appellant and his companion were located was dark but that there was
some light emanating from either the back of the club building or a street lamp. She
testified that Sergeant Lile had a flashlight and that when he saw the appellant, he turned
it on and called out, "Police Department. What are you doing?" Detective Ochoa reported
that she could not see Vinton directly because Sergeant Lile was blocking her view, but
she soon realized that Vinton was walking towards Sergeant Lile with a beer bottle in his
hand. Sergeant Lile then advised Vinton to put the bottle down, but Vinton did not obey
and turned instead towards Detective Ochoa. Detective Ochoa, assuming that Vinton did
not follow Sergeant Lile's instruction because he did not understand English, told Vinton
in Spanish to put the bottle down again. Vinton still refused to do so and continued to walk
towards Detective Ochoa, who then stepped backwards to maintain a safe distance from
him. She recalled that Vinton smelled like alcohol. Detective Ochoa asked Vinton, again
in Spanish, to put the bottle down for the third time. Vinton told her in a frustrated tone that
he understood English, so she responded, "Then put the bottle down." Detective Ochoa
testified that as she reached for the bottle, he tossed the bottle to the side where the
alleyway met some grass.

 Detective Ochoa then asked Vinton what he and his companion had been doing in
the alley. Vinton evasively replied that he wanted to return to the bar. He then attempted
to walk past Detective Ochoa, so she placed herself directly in Vinton's path and stated,
"You're not going back into the bar. I need you to answer my question. What were you
doing out here?" Vinton answered that he had urinated in the alleyway, to which Ochoa
responded, "You were out here a long time to just be using the bathroom. What were you
doing out here?" When Vinton again tried to walk past Detective Ochoa to return to the
bar, Sergeant Lile, who had been questioning Vinton's companion, ordered her to place
Vinton in restraints. Upon cross-examination, Detective Ochoa stated that she did not
believe Vinton's statement about urinating in the alley because she never saw him make
any motions or gestures to cover himself when he was first approached by the officers. 

 Sergeant Lile, a twelve-year veteran of the Kingsville Police Department, was the
State's next witness. Sergeant Lile admitted that initially he could only see "shapes" and
"silhouettes" in the dark alley. However, the officer was able to see Vinton clearly when
he turned his flashlight on and pointed it towards Vinton as he shouted, "Hey, Police!" 
Sergeant Lile then witnessed Vinton drop something from his right hand and immediately
start walking towards him with a beer bottle in his left hand. He ordered Vinton to put the
beer bottle down, but Vinton refused and instead turned towards Detective Ochoa. While
Detective Ochoa dealt with Vinton, Sergeant Lile approached Vinton's companion, who
was identified as Andrew Klecak. Sergeant Lile testified that Klecak had been urinating
in the alleyway when the detectives initially identified themselves. He walked up to Klecak,
shined his flashlight directly onto Klecak's face, and noted that Klecak's pupils were slow
to constrict and that he had a "white powdery substance up his nostrils." Sergeant Lile
then put his hand on Klecak's chest and detected a rapid heartbeat. 

 At one point, Sergeant Lile told Detective Ochoa to restrain Vinton with handcuffs
due to Vinton's "belligerent and angry" behavior. Sergeant Lile testified that he then went
to investigate the item he saw Vinton drop from his right hand. He described the item as
a "small blue bagg[ie], very small, maybe an inch at the most in length with a white
powdery substance inside of it." He took photos of the "baggie" and the surrounding area
where it was found. He noted that the bag itself was "clean" compared to its surroundings,
meaning that it was not covered by the sticks, weeds, or trash that otherwise littered the
alley. Sergeant Lile testified that he did not request that the Kingsville Police Department
laboratory run a fingerprint analysis on the baggie because he was confident that it was the
item Vinton dropped. Sergeant Lile then testified about a Texas Department of Public
Safety drug analysis laboratory report, which reported that the substance inside the baggie
was in fact cocaine and that it weighed .37 grams. (2) 

 On cross-examination, Sergeant Lile confirmed that Vinton was facing him when he
initially shined his flashlight on him and that he did not believe that Vinton had been
urinating in the alley at the time the detectives arrived. He stated that it simply was "not
possible" for Vinton to be zipping up his pants at that time. Sergeant Lile also confirmed
that there was "no doubt in [his] mind" that Vinton dropped the baggie of cocaine he found. 
Finally, Sergeant Lile testified that he did not check to see whether Vinton had the same
kind of white, powdery substance on his face or around his nose because "of [Vinton's]
demeanor and hostility." 

B. The Defense's Evidence

 Vinton waived his Fifth Amendment right and testified on his own behalf. He stated
that he and Klecak were outside the club at that time waiting for their ride to take them
home. While waiting, they decided to go to the alley behind the club because they needed
to urinate. He stated that they did not go back inside the club to use the men's restroom
because the facility was small and the line to use it was long, so they chose somewhere
"dark" like the alleyway where people would not see them. He described the alleyway as
"dirty" with trash, bushes, and old mesquite branches. He testified that he was urinating
facing a wall in the alley when he heard someone coming, so he "turned a little bit and
zipped up." According to Vinton, as Sergeant Lile flashed the flashlight on him, he was still
zipping up his pants with his beer bottle in hand. Vinton testified that the only item he was
holding at the time was a beer bottle and that he did not drop anything from his other hand. 
Vinton claimed that as he walked towards the detectives, he put the beer bottle down when
he was asked. Finally, Vinton admitted that he had been drinking that night and "had a
buzz" when the detectives were questioning him. He also testified that he used cocaine
occasionally. 

 The jury convicted Vinton of possession of cocaine and the trial court judge
sentenced him to two years' imprisonment and assessed a $1,000 fine. (3) This appeal
followed. 

II. Standard of Review and Applicable Law

 When determining the legal and factual sufficiency of evidence, courts must utilize
two separate and distinct standards. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000). A legal sufficiency analysis requires the court to view all of the evidence in "a light
most favorable to the verdict and to determine whether a rational trier of fact could have
found all of the essential elements of the crime beyond a reasonable doubt." Jackson v.
Virginia, 443 U.S. 307, 318-19 (1979); see Laster v. State, 275 S.W.3d 512, 517 (Tex.
Crim. App. 2009). The trier of fact is the sole judge of the facts, the credibility of the
witnesses, and the weight given to testimony. Tex. Code Crim. Proc. Ann. art 38.04
(Vernon 1979); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.]
2000, pet. ref'd). We do not reevaluate the weight or credibility of the evidence, nor do we
substitute our own conclusions for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000) (en banc). Instead, we resolve any inconsistencies in the evidence in
favor of the final judgment and consider whether the jury reached a rational decision. 
Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). 

 In contrast, a factual sufficiency review requires the court to review the evidence in
a neutral light to determine whether a jury was rationally justified in finding guilt beyond a
reasonable doubt. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). 
Evidence can be factually insufficient if it is so weak that it is clearly wrong and the result
is manifestly unjust, or if the jury's verdict is against the great weight and preponderance
of the evidence. Id. We defer to the fact finder's decision regarding contradictory
testimony unless the record reveals that a different result is required. Lancon v. State, 253
S.W.3d 699, 705 (Tex. Crim. App. 2008). 

 Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet.
ref'd). Under a hypothetically correct jury charge, Vinton committed his offense if he
knowingly or intentionally possessed a controlled substance listed in Penalty Group 1. See
Tex. Health & Safety Code Ann. § 481.115. "Possession" is defined as being in the
"actual care, custody, control, or management" of the defendant. Id. § 481.002(38)
(Vernon 2003). 

III. Discussion

 By one issue, Vinton argues that there was legally and factually insufficient evidence
to prove that he possessed the baggie of cocaine that night. Because the cocaine was not
found in his actual possession, appellant heavily relies upon Lassaint v. State to argue that
the State's evidence did not offer any "affirmative links" linking him to the baggie of
cocaine. See 79 S.W.3d 736, 740-41 (Tex.App.-Corpus Christi 2002, no pet.). Lassaint
sets forth a list of nonexclusive factors to consider when attempting to link an accused to
the contraband involved in the case. Id. The factors include whether:

 1. The contraband was in plain view or recovered from an enclosed
place;


 2. The accused was the owner of the premises or had the right to
possess the place where the contraband was found, or was the
owner or driver of the automobile in which the contraband was
found;


 3. The accused was found with a large amount of cash;


 4. The contraband was conveniently accessible to the accused, or
found on the same side of the vehicle as the accused was sitting;


 5. The contraband was found in close proximity to the accused;


 6. A strong residual odor of the contraband was present;


 7. The accused possessed other contraband when arrested;


 8. Paraphernalia to use the contraband was in view, or found on the
accused;


 9. The physical condition of the accused indicated recent consumption
of the contraband in question;


 10. Conduct by the accused indicated a consciousness of guilt;


 11. The accused attempted to escape or flee;


 12. The accused made furtive gestures;


 13. The accused had a special connection to the contraband;


 14. The occupants of the premises gave conflicting statements about
relevant matters;


 15. The accused made incriminating statements connecting himself to
the contraband;


 16. The quantity of the contraband; and,


 17. The accused was observed in a suspicious area under suspicious
circumstances.

 

Id.; see Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006); Olivarez v. State,
171 S.W.3d 283, 291 (Tex. App.-Houston [14th Dist.] 2005, no pet.). 

A. Legal Sufficiency 

 Vinton argues that there is legally insufficient evidence to establish that he
possessed the contraband. Foremost, he contends that the baggie could have belonged
to his companion Klecak, who was apparently under the influence of cocaine, had a "white
powdery substance" around his nose, and was in the vicinity of the baggie at the time of
the arrest. Furthermore, Vinton asserts that the Kingsville police department did not take
fingerprints of the baggie to rule out Klecak's possible possession, and that Sergeant Lile
never personally checked Vinton for a "white, powdery substance." However, the law does
not require exclusive possession of the contraband. "The mere fact that a person other
than the accused might have joint possession of the premises does not require the State
to prove that the defendant had sole possession of the contraband. . . ." Poindexter v.
State, 153 S.W.3d 402, 412 (Tex. Crim. App. 2005). Instead, the law only requires that
there exist affirmative links between the defendant and the drugs. Id. 

 Next, Vinton argues that he negated the Lassaint factor regarding "conflicting
statements about relevant matters" because he told the detectives that he and Klecak were
in the alleyway to urinate and Sergeant Lile confirmed that Klecak was in fact relieving
himself when they arrived. See Lassaint, 79 S.W.3d at 741. We are not convinced by this
argument. In essence, Vinton claims that the jury should be compelled to trust the veracity
of all of his statements merely because one of them was corroborated. The decision
regarding Vinton's credibility as a witness, however, is within the province of the jury and
we do not reevaluate their conclusions. King, 29 S.W.3d at 562. Furthermore, there was
ample evidence to show that enough time had elapsed for Vinton not only to urinate in the
alleyway but also to possibly possess cocaine--the two acts were not mutually exclusive.

 In addition, Vinton asserts that Sergeant Lile's choice of the word "unusual" instead
of "suspicious" to describe Vinton's behavior negated the Lassaint factor stating that the
"accused was observed in a suspicious area under suspicious circumstances." Id. This
is unpersuasive for two reasons. First, Sergeant Lile did use the word "suspicious" in his
testimony to describe Vinton's behavior. Second, appellant's interpretation of this factor
is far too literal and narrow--the words "unusual" and "suspicious" are synonyms and
Sergeant Lile used both to describe Vinton's behavior that night.

 Finally, Vinton notes that the cocaine was found in a public alley behind a popular
bar and that because access to this area was not limited or exclusive, the baggie of
cocaine could have been dropped by anyone. However, one's "presence or proximity,
when combined with other evidence or 'links,' may be sufficient to establish that element
beyond a reasonable doubt." Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim. App.
2006). In fact, there are substantial "affirmative links" that connect Vinton to the
contraband at issue. These factors include: the "clean" appearance of the baggie in plain
view with no debris, trash, or branches on it, thus indicating that it was dropped recently;
the fact that the baggie was conveniently accessible and in close proximity to Vinton; the
fact that Vinton attempted to flee or escape to the bar when Detective Ochoa questioned
him; Vinton's contradictory statements stating that he "wanted to go back to the bar" but
that he was also "waiting for a ride"; the fact that Vinton's "physical condition" of being
"buzzed" could have indicated either alcohol or cocaine use; and that Vinton made furtive
gestures by refusing to drop the beer bottle when asked. The "combined logical force of
the evidence" constitutes sufficient "links" to tie Vinton to the baggie of cocaine. See
Evans, 202 S.W.3d at 162. 

 In addition to the numerous Lassaint factors establishing Vinton's possession of the
contraband, the jury also heard Sergeant Lile's direct eyewitness testimony stating that he
saw Vinton drop the item at issue. As previously discussed, the jury had the ability to judge
the credibility of the witnesses. "In deciding whether the evidence is sufficient to link the
defendant to the contraband, the trier of fact is the exclusive judge of the credibility of the
witnesses and the weight to be given to their testimony." Poindexter, 153 S.W.3d 402, 406
(citing Mattias v. State, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987)). The jury, as the trier
of fact, believed Sergeant Lile's testimony over Vinton's. Sergeant Lile testified that he had
no doubt that the baggie was in Vinton's possession and that because the alley was so
dark, "[h]ad [he] not known that the baggie was there, [he] would not have been able to see
it." Furthermore, the jury also had the ability to review photos and to listen to Vinton's own
testimony that he used cocaine occasionally. Viewing this evidence in a light most
favorable to the verdict, we conclude that a rational jury could have determined that Vinton
had "actual care, custody, control, or management" of the baggie of cocaine beyond a
reasonable doubt. See Tex. Health & Safety Code Ann. § 481.002(38). Accordingly, the
evidence is legally sufficient to support the conviction.

B. Factual Sufficiency

 Vinton bases his factual sufficiency challenge on the same grounds as his legal
sufficiency challenge. In sum, he argues that there is not enough evidence to "link" him
to the cocaine at issue and establish possession. Analyzing all the evidence in a neutral
light, we conclude that the jury was rationally justified in finding that Vinton "possessed" the
baggie of cocaine found in this case; thus, the evidence is factually sufficient. The jury's
finding is neither clearly wrong nor manifestly unjust. Watson, 204 S.W.3d at 414-15. 
Vinton's sole issue is overruled.

IV. Conclusion

 We affirm the decision of the trial court. 



 ________________________

 DORI CONTRERAS GARZA

 Justice 


Do Not Publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the 

29th day of April, 2010.
1. We note that in different parts of the record, appellant's name is spelled as "Ipolito" or as "Hipolito." 
Because the appellant spelled his name as "Ipolito" when the trial judge requested him to do so for the court
reporter's record, we will use that spelling.
2. The report was stipulated to by both the State and defendant prior to trial and was admitted into
evidence without objection. Specifically, the stipulation provided that:


 A Department of Public Safety chemist, Efrain Perez, Jr., performed a chemical analysis on
the substances as listed above and the tests revealed the substances contained cocaine. 
The weight of the substances totaled .37 grams. The cocaine including adulterants or
dilutants and [sic] was less than one (1) gram. 


The stipulation also noted that "cocaine is a controlled substance listed in Penalty Group 1 of the Texas
Controlled Substances Act." See Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2009).
3. Vinton made the election to have the Court assess punishment prior to voir dire.