

# NUMBER 13-09-00131-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**IPOLITO VINTON,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                           **Appellee.**

---

## On appeal from the 105th District Court
## of Kleberg County, Texas.

---

# MEMORANDUM OPINION

## Before Justices Yañez, Rodriguez, and Garza
## Memorandum Opinion by Justice Garza

A jury convicted appellant Ipolito Vinton[1] of possession of less than one gram of cocaine, a state jail felony, on February 9, 2009. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (Vernon Supp. 2009). The trial judge sentenced Vinton to confinement in a state facility for a term of two years and also ordered a fine of $1,000.00. *See* TEX.

---

[1] We note that in different parts of the record, appellant's name is spelled as "Ipolito" or as "Hipolito." Because the appellant spelled his name as "Ipolito" when the trial judge requested him to do so for the court reporter's record, we will use that spelling.

PENAL CODE ANN. § 12.35 (Vernon Supp. 2009). By one issue, Vinton challenges the legal and factual sufficiency of the evidence used to convict him. We affirm.

## I. BACKGROUND

On March 29, 2008, Sergeant Bradley Lile and Detective Sandra Ochoa of the Kingsville Police Department Detective Division were on night patrol in an unmarked vehicle. While driving past the Day & Night Club, located on 7th Street and Santa Gertrudis Street in Kingsville, the detectives noticed Vinton and another male looking up and down 7th Street in a "suspicious" manner. The detectives continued to patrol the area and next saw Vinton and his companion in an alleyway behind the Day & Night Club. When they realized that appellant and his companion were still in the alleyway on their third drive-by, the detectives decided to investigate. Sergeant Lile parked the unmarked vehicle while Detective Ochoa radioed back to dispatch to confirm that they were stopping. Both of the detectives were dressed in black t-shirts labeled with the word "POLICE" in front in white letters, had their official police department badges displayed, and had weapons on their hips.

### A. The State's Evidence

The State's first witness was Detective Ochoa. Detective Ochoa recalled that the alleyway where appellant and his companion were located was dark but that there was some light emanating from either the back of the club building or a street lamp. She testified that Sergeant Lile had a flashlight and that when he saw the appellant, he turned it on and called out, "Police Department. What are you doing?" Detective Ochoa reported that she could not see Vinton directly because Sergeant Lile was blocking her view, but she soon realized that Vinton was walking towards Sergeant Lile with a beer bottle in his hand. Sergeant Lile then advised Vinton to put the bottle down, but Vinton did not obey

2

and turned instead towards Detective Ochoa. Detective Ochoa, assuming that Vinton did not follow Sergeant Lile's instruction because he did not understand English, told Vinton in Spanish to put the bottle down again. Vinton still refused to do so and continued to walk towards Detective Ochoa, who then stepped backwards to maintain a safe distance from him. She recalled that Vinton smelled like alcohol. Detective Ochoa asked Vinton, again in Spanish, to put the bottle down for the third time. Vinton told her in a frustrated tone that he understood English, so she responded, "Then put the bottle down." Detective Ochoa testified that as she reached for the bottle, he tossed the bottle to the side where the alleyway met some grass.

Detective Ochoa then asked Vinton what he and his companion had been doing in the alley. Vinton evasively replied that he wanted to return to the bar. He then attempted to walk past Detective Ochoa, so she placed herself directly in Vinton's path and stated, "You're not going back into the bar. I need you to answer my question. What were you doing out here?" Vinton answered that he had urinated in the alleyway, to which Ochoa responded, "You were out here a long time to just be using the bathroom. What were you doing out here?" When Vinton again tried to walk past Detective Ochoa to return to the bar, Sergeant Lile, who had been questioning Vinton's companion, ordered her to place Vinton in restraints. Upon cross-examination, Detective Ochoa stated that she did not believe Vinton's statement about urinating in the alley because she never saw him make any motions or gestures to cover himself when he was first approached by the officers.

Sergeant Lile, a twelve-year veteran of the Kingsville Police Department, was the State's next witness. Sergeant Lile admitted that initially he could only see "shapes" and "silhouettes" in the dark alley. However, the officer was able to see Vinton clearly when he turned his flashlight on and pointed it towards Vinton as he shouted, "Hey, Police!"

3

Sergeant Lile then witnessed Vinton drop something from his right hand and immediately start walking towards him with a beer bottle in his left hand. He ordered Vinton to put the beer bottle down, but Vinton refused and instead turned towards Detective Ochoa. While Detective Ochoa dealt with Vinton, Sergeant Lile approached Vinton's companion, who was identified as Andrew Klecak. Sergeant Lile testified that Klecak had been urinating in the alleyway when the detectives initially identified themselves. He walked up to Klecak, shined his flashlight directly onto Klecak's face, and noted that Klecak's pupils were slow to constrict and that he had a "white powdery substance up his nostrils." Sergeant Lile then put his hand on Klecak's chest and detected a rapid heartbeat.

At one point, Sergeant Lile told Detective Ochoa to restrain Vinton with handcuffs due to Vinton's "belligerent and angry" behavior. Sergeant Lile testified that he then went to investigate the item he saw Vinton drop from his right hand. He described the item as a "small blue bagg[ie], very small, maybe an inch at the most in length with a white powdery substance inside of it." He took photos of the "baggie" and the surrounding area where it was found. He noted that the bag itself was "clean" compared to its surroundings, meaning that it was not covered by the sticks, weeds, or trash that otherwise littered the alley. Sergeant Lile testified that he did not request that the Kingsville Police Department laboratory run a fingerprint analysis on the baggie because he was confident that it was the item Vinton dropped. Sergeant Lile then testified about a Texas Department of Public Safety drug analysis laboratory report, which reported that the substance inside the baggie was in fact cocaine and that it weighed .37 grams.[2]

---

[2] The report was stipulated to by both the State and defendant prior to trial and was admitted into evidence without objection. Specifically, the stipulation provided that:

A Department of Public Safety chemist, Efrain Perez, Jr., performed a chemical analysis on the substances as listed above and the tests revealed the substances contained cocaine.

4

On cross-examination, Sergeant Lile confirmed that Vinton was facing him when he initially shined his flashlight on him and that he did not believe that Vinton had been urinating in the alley at the time the detectives arrived. He stated that it simply was "not possible" for Vinton to be zipping up his pants at that time. Sergeant Lile also confirmed that there was "no doubt in [his] mind" that Vinton dropped the baggie of cocaine he found. Finally, Sergeant Lile testified that he did not check to see whether Vinton had the same kind of white, powdery substance on his face or around his nose because "of [Vinton's] demeanor and hostility."

## B.     The Defense's Evidence

Vinton waived his Fifth Amendment right and testified on his own behalf. He stated that he and Klecak were outside the club at that time waiting for their ride to take them home. While waiting, they decided to go to the alley behind the club because they needed to urinate. He stated that they did not go back inside the club to use the men's restroom because the facility was small and the line to use it was long, so they chose somewhere "dark" like the alleyway where people would not see them. He described the alleyway as "dirty" with trash, bushes, and old mesquite branches. He testified that he was urinating facing a wall in the alley when he heard someone coming, so he "turned a little bit and zipped up." According to Vinton, as Sergeant Lile flashed the flashlight on him, he was still zipping up his pants with his beer bottle in hand. Vinton testified that the only item he was holding at the time was a beer bottle and that he did not drop anything from his other hand. Vinton claimed that as he walked towards the detectives, he put the beer bottle down when

The weight of the substances totaled .37 grams. The cocaine including adulterants or dilutants and [sic] was less than one (1) gram.

The stipulation also noted that "cocaine is a controlled substance listed in Penalty Group 1 of the Texas Controlled Substances Act." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Vernon Supp. 2009).

he was asked. Finally, Vinton admitted that he had been drinking that night and "had a buzz" when the detectives were questioning him. He also testified that he used cocaine occasionally.

The jury convicted Vinton of possession of cocaine and the trial court judge sentenced him to two years' imprisonment and assessed a $1,000 fine.[3] This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

When determining the legal and factual sufficiency of evidence, courts must utilize two separate and distinct standards. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). A legal sufficiency analysis requires the court to view all of the evidence in "a light most favorable to the verdict and to determine whether a rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. TEX. CODE CRIM. PROC. ANN. art 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight or credibility of the evidence, nor do we substitute our own conclusions for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc). Instead, we resolve any inconsistencies in the evidence in favor of the final judgment and consider whether the jury reached a rational decision. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In contrast, a factual sufficiency review requires the court to review the evidence in

---

[3] Vinton made the election to have the Court assess punishment prior to voir dire.

a neutral light to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Evidence can be factually insufficient if it is so weak that it is clearly wrong and the result is manifestly unjust, or if the jury's verdict is against the great weight and preponderance of the evidence. *Id*. We defer to the fact finder's decision regarding contradictory testimony unless the record reveals that a different result is required. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, Vinton committed his offense if he knowingly or intentionally possessed a controlled substance listed in Penalty Group 1. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115. "Possession" is defined as being in the "actual care, custody, control, or management" of the defendant. *Id*. § 481.002(38) (Vernon 2003).

### III. DISCUSSION

By one issue, Vinton argues that there was legally and factually insufficient evidence to prove that he possessed the baggie of cocaine that night. Because the cocaine was not found in his actual possession, appellant heavily relies upon *Lassaint v. State* to argue that the State's evidence did not offer any "affirmative links" linking him to the baggie of cocaine. *See* 79 S.W.3d 736, 740-41 (Tex.App.–Corpus Christi 2002, no pet.). *Lassaint* sets forth a list of nonexclusive factors to consider when attempting to link an accused to the contraband involved in the case. *Id*. The factors include whether:

1. The contraband was in plain view or recovered from an enclosed place;

2. The accused was the owner of the premises or had the right to possess the place where the contraband was found, or was the owner or driver of the automobile in which the contraband was found;

3. The accused was found with a large amount of cash;

4. The contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting;

5. The contraband was found in close proximity to the accused;

6. A strong residual odor of the contraband was present;

7. The accused possessed other contraband when arrested;

8. Paraphernalia to use the contraband was in view, or found on the accused;

9. The physical condition of the accused indicated recent consumption of the contraband in question;

10. Conduct by the accused indicated a consciousness of guilt;

11. The accused attempted to escape or flee;

12. The accused made furtive gestures;

13. The accused had a special connection to the contraband;

14. The occupants of the premises gave conflicting statements about relevant matters;

15. The accused made incriminating statements connecting himself to the contraband;

16. The quantity of the contraband; and,

17. The accused was observed in a suspicious area under suspicious circumstances.

*Id*.; *see Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006); *Olivarez v. State*,

171 S.W.3d 283, 291 (Tex. App.–Houston [14th Dist.] 2005, no pet.).

## A. Legal Sufficiency

Vinton argues that there is legally insufficient evidence to establish that he possessed the contraband. Foremost, he contends that the baggie could have belonged to his companion Klecak, who was apparently under the influence of cocaine, had a "white powdery substance" around his nose, and was in the vicinity of the baggie at the time of the arrest. Furthermore, Vinton asserts that the Kingsville police department did not take fingerprints of the baggie to rule out Klecak's possible possession, and that Sergeant Lile never personally checked Vinton for a "white, powdery substance." However, the law does not require exclusive possession of the contraband. "The mere fact that a person other than the accused might have joint possession of the premises does not require the State to prove that the defendant had *sole* possession of the contraband. . . ." *Poindexter v. State*, 153 S.W.3d 402, 412 (Tex. Crim. App. 2005). Instead, the law only requires that there exist affirmative links between the defendant and the drugs. *Id.*

Next, Vinton argues that he negated the *Lassaint* factor regarding "conflicting statements about relevant matters" because he told the detectives that he and Klecak were in the alleyway to urinate and Sergeant Lile confirmed that Klecak was in fact relieving himself when they arrived. *See Lassaint*, 79 S.W.3d at 741. We are not convinced by this argument. In essence, Vinton claims that the jury should be compelled to trust the veracity of all of his statements merely because one of them was corroborated. The decision regarding Vinton's credibility as a witness, however, is within the province of the jury and we do not reevaluate their conclusions. *King*, 29 S.W.3d at 562. Furthermore, there was ample evidence to show that enough time had elapsed for Vinton not only to urinate in the

9

alleyway but also to possibly possess cocaine—the two acts were not mutually exclusive.

In addition, Vinton asserts that Sergeant Lile's choice of the word "unusual" instead of "suspicious" to describe Vinton's behavior negated the *Lassaint* factor stating that the "accused was observed in a suspicious area under suspicious circumstances." *Id*. This is unpersuasive for two reasons. First, Sergeant Lile did use the word "suspicious" in his testimony to describe Vinton's behavior. Second, appellant's interpretation of this factor is far too literal and narrow—the words "unusual" and "suspicious" are synonyms and Sergeant Lile used both to describe Vinton's behavior that night.

Finally, Vinton notes that the cocaine was found in a public alley behind a popular bar and that because access to this area was not limited or exclusive, the baggie of cocaine could have been dropped by anyone. However, one's "presence or proximity, when combined with other evidence or 'links,' may be sufficient to establish that element beyond a reasonable doubt." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). In fact, there are substantial "affirmative links" that connect Vinton to the contraband at issue. These factors include: the "clean" appearance of the baggie in plain view with no debris, trash, or branches on it, thus indicating that it was dropped recently; the fact that the baggie was conveniently accessible and in close proximity to Vinton; the fact that Vinton attempted to flee or escape to the bar when Detective Ochoa questioned him; Vinton's contradictory statements stating that he "wanted to go back to the bar" but that he was also "waiting for a ride"; the fact that Vinton's "physical condition" of being "buzzed" could have indicated either alcohol or cocaine use; and that Vinton made furtive gestures by refusing to drop the beer bottle when asked. The "combined logical force of the evidence" constitutes sufficient "links" to tie Vinton to the baggie of cocaine. *See*

10

*Evans*, 202 S.W.3d at 162.

In addition to the numerous *Lassaint* factors establishing Vinton's possession of the contraband, the jury also heard Sergeant Lile's direct eyewitness testimony stating that he saw Vinton drop the item at issue. As previously discussed, the jury had the ability to judge the credibility of the witnesses. "In deciding whether the evidence is sufficient to link the defendant to the contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *Poindexter*, 153 S.W.3d 402, 406 (*citing Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987)). The jury, as the trier of fact, believed Sergeant Lile's testimony over Vinton's. Sergeant Lile testified that he had no doubt that the baggie was in Vinton's possession and that because the alley was so dark, "[h]ad [he] not known that the baggie was there, [he] would not have been able to see it." Furthermore, the jury also had the ability to review photos and to listen to Vinton's own testimony that he used cocaine occasionally. Viewing this evidence in a light most favorable to the verdict, we conclude that a rational jury could have determined that Vinton had "actual care, custody, control, or management" of the baggie of cocaine beyond a reasonable doubt. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38). Accordingly, the evidence is legally sufficient to support the conviction.

## B.    Factual Sufficiency

Vinton bases his factual sufficiency challenge on the same grounds as his legal sufficiency challenge. In sum, he argues that there is not enough evidence to "link" him to the cocaine at issue and establish possession. Analyzing all the evidence in a neutral light, we conclude that the jury was rationally justified in finding that Vinton "possessed" the baggie of cocaine found in this case; thus, the evidence is factually sufficient. The jury's

11

finding is neither clearly wrong nor manifestly unjust. *Watson*, 204 S.W.3d at 414-15.

Vinton's sole issue is overruled.

## IV. Conclusion

_____We affirm the decision of the trial court.


_____
DORI CONTRERAS GARZA
Justice

Do Not Publish.
Tex. R. App. P. 47.2(b)
Delivered and filed the
29th day of April, 2010.