**Opinion filed June 25, 2015**



# In The

# Eleventh Court of Appeals

_____

## No. 11-13-00168-CR

_____

## LANCE DELANEY WALLACE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 350th District Court

### Taylor County, Texas

### Trial Court Cause No. 10221-D

### M E M O R A N D U M   O P I N I O N

The trial court convicted Lance Delaney Wallace of theft of over $1,500 but less than $20,000 and assessed his punishment at confinement in the State Jail Division of the Texas Department of Criminal Justice for a term of one year. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(A) (West Supp. 2014). The trial court suspended Appellant's sentence, placed him on community supervision for a term of three years, assessed a fine in the amount of $500, and assessed restitution in the amount of $2,000. On appeal, Appellant challenges the sufficiency of the evidence

to support his conviction and contends that he was denied the effective assistance of counsel. We affirm.

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The grand jury indicted Appellant for unlawfully acquiring and exercising control over money of the value of $1,500 or more but less than $20,000 from Kimberly Conaway. A person commits the offense of theft "if he unlawfully appropriates property with intent to deprive the owner of property." PENAL § 31.03(a). Appropriation is unlawful if it is performed without the effective consent of the owner. *Id.* § 31.03(b)(1). Consent is not effective if induced by deception. *Id.* § 31.01(3)(A). One of the statutory definitions of "deception" is "promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed." *Id.* § 31.01(1)(E). "[F]ailure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed." *Id.*

In his first issue, Appellant asserts that the State failed to show, beyond a reasonable doubt, that he intended to deprive Conaway of any property. Appellant maintains that he attempted to repair and remodel Conaway's kitchen but that Conaway became caustic and uncooperative, and he was unable to finish the job.

2

Appellant offered to give her the cabinets that he purchased for her kitchen, but she refused to take them. Appellant argues that his actions did not rise to the level of a criminal offense and that this matter should have been handled as a civil dispute. The State argues that the evidence was sufficient to convict Appellant of theft in the amount of $2,000. Specifically, the State argues that Appellant called the insurance company to get more money for the cabinets, that the insurance company wrote a $2,000 check for the purchase of the cabinets from Lowe's, and that Appellant committed theft when he did not use the $2,000 to purchase the cabinets from Lowe's.

The evidence at trial showed that Conaway hired Appellant to fix a water leak and do some repairs in her kitchen. They did not sign a written contract, and although the scope of the work to be completed by Appellant was disputed at trial, an estimate from Appellant showed that one of the tasks involved was to "[r]eplace all cabinets and counter top [sic] along [the] exterior kitchen wall." Conaway testified that she discovered the water leak in June 2010 and filed a claim with her insurance company. The insurance adjuster originally estimated the cost of repair at $2,000. Appellant told Conaway that she needed to replace the cabinets and that it would cost $10,000 to fix the kitchen the way that Conaway wanted it fixed. Conaway called the insurance company to request another estimate, and Leigh Ferguson, another insurance adjuster, came out and estimated the cost of repair at $9,500. Appellant performed some work on Conaway's kitchen, and after verifying the work, the adjuster issued a check for $4,951.17. Conaway signed the check over to Appellant.

Appellant did some more plumbing and electrical work on the house and told Conaway he needed more money. Conaway contacted the insurance company and received another check, which she signed over to Appellant. This check was for $1,978.87. After receiving the second check, Appellant and Conaway went to

3

Lowe's together to pick out cabinets. Conaway testified that they did not purchase the cabinets that day but that Appellant knew what to order and told her that he would come back and get the cabinets at a later date. Appellant contacted the insurance company about needing more money, and the insurance company issued another check. This check was for $2,000 and was made out to Conaway and Appellant's company. Conaway testified that it was issued for depreciation. Ferguson testified that the check was partially for the depreciation holdback but that it was also issued so that Appellant could order the cabinets and finish the project. Ferguson believed that Conaway was ordering the cabinets from Lowe's.

Conaway testified that she did not know whether Appellant purchased the cabinets but that he did not install them in her kitchen. She also testified that she and Appellant did not discuss buying any cabinets other than the ones at Lowe's and that she did not know the cost of the cabinets. Conaway tried to contact Appellant many times, but he never completed the work that she requested. Rene Ramirez testified that he went to Conaway's house to evaluate the work that had been done by Appellant, and he concluded that only $2,000 worth of work had been completed. Ramirez estimated that it would cost another $12,000 to complete the project.

Appellant testified that he stopped working on Conaway's house because she started "trash-talking" him on Facebook and stalking him. As to the cabinets, Appellant explained that the cabinets at Lowe's were out of Conaway's price range and that they discussed finding the cabinets through a cheaper source. Appellant showed that Conaway had sent him a text message on September 29, 2010, in which Conaway told Appellant that she knew of another place that they could get the custom cabinets besides Lowe's. Appellant testified that those cabinets were also out of Conaway's price range so he looked for the cabinets elsewhere. Appellant eventually bought used cabinets, a sink, and a range for $2,500 from another contractor. He told Conaway that she could come get her cabinets, and she told him

4

that she would send her son. On two occasions, Conaway's son went to Appellant's house to get the cabinets but did not end up leaving with the cabinets. Conaway was present on the second occasion, but after the cabinets had been loaded, Conaway decided that she did not want them. Appellant testified that all of the cabinets were available to Conaway, and had always been available to Conaway, but that she would not take them. Appellant said that he had no other use for the cabinets.

The trial court specifically found that Appellant was guilty of theft of the $2,000 that was to be used to purchase the kitchen cabinets at Lowe's. The trial court stated that the evidence was too inconsistent regarding the remainder of the money paid by the insurance company to find Appellant guilty of theft of that money and that the dispute regarding that money was a civil matter. The trial court also stated that it believed that Appellant's purchase of the used cabinets was an attempt to cover himself after the fact. Before the proceedings concluded, the trial court withdrew its findings and stated that it would make an appropriate finding at the end of the sentencing hearing. The trial court did not make any specific findings in conjunction with finding Appellant guilty at the sentencing hearing; however, the parties and the court discussed Appellant's guilt in relation to the $2,000 check.

There is no dispute that Appellant did not finish the repair work at Conaway's home. However, it is not enough that the evidence shows that the accused has failed to perform the promise at issue. PENAL § 31.01(1)(E). To support a conviction for theft, there must be evidence to show that, at the time of the customer's voluntary payment, the accused intended, or knew, that he would not perform. *Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014).

We hold that there is sufficient evidence to show that Appellant intended to deprive Conaway of the $2,000 and that, when he received the $2,000, he did not intend to order the cabinets and install them in Conaway's kitchen as promised. Conaway testified that she and Appellant went to Lowe's and picked out the cabinets

that she wanted for her kitchen. Appellant told her that he would return to Lowe's and purchase the cabinets at a later date, but Appellant never did so. Nor did he ever return to Conaway's house. Appellant testified that he was not going to purchase the cabinets at Lowe's because Conaway could not afford those cabinets. However, Ferguson testified that it was his understanding that Appellant was going to order the cabinets from Lowe's, and he testified that he gave Appellant the $2,000 so that Appellant could order those cabinets. Ferguson issued the third check after Appellant and Conaway went to Lowe's and after Appellant represented to him that he needed more money for the cabinets. Although Appellant testified that he later purchased used cabinets for Conaway from another contractor and that Conaway would not accept them, the trial court believed that Appellant only purchased the cabinets to cover himself after the fact and that Appellant never intended to purchase the cabinets as agreed. In addition, Appellant testified that he only agreed to help Conaway get more money from the insurance company (for a fee of $3,000) and that he never agreed to do the repair work for Conaway.

The trial court, as the trier of fact, was the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987). As such, the court was entitled to accept or reject any or all of the testimony of any witness. *Id.* When reviewing the evidence, we do not substitute our judgment for that of the factfinder even if we may have reached a different result. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant did not intend to purchase cabinets or install them in Conaway's kitchen when he took the $2,000 and, thus, could have found that Appellant committed the offense of theft of over $1,500 but less than $20,000. *See Jackson*, 443 U.S. at 319. Appellant's first issue is overruled.

In his second issue, Appellant alleges that his trial attorney was ineffective because he failed to request discovery prior to trial, failed to seek a transfer of venue, and failed to seek recusal of the trial judge. In order to determine whether Appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Where the record is silent, we cannot speculate on trial counsel's strategy. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Thus, an allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* Generally, the record on direct appeal will not be sufficient to show that trial counsel's performance was so lacking as to overcome the presumption of reasonable conduct. *Id.* at 813–14.

We will first discuss Appellant's assertion that defense counsel rendered ineffective assistance when he failed to request a change of venue and failed to file a motion to recuse the trial judge. Appellant contends that counsel should have sought a transfer of venue and should have sought to recuse the judge because the district attorney and trial judge knew and worked with Conaway in her capacity as a welfare fraud investigator. Appellant states in his brief that "Conaway maintained a professional relationship, at minimum, with the local District Attorney's office and

7

the local Courts with her position as an investigator for welfare fraud." He further asserts that "[t]his relationship most likely [led] to a bias for the District Attorney's office to prosecute. Additionally, the relationship may have created a subjective bias with the Court."

The record does show that Conaway had a professional relationship with the check fraud division of the district attorney's office through her job as a fraud investigator for the Department of Health and Human Services and that she went to see someone in the check fraud division in connection with her theft allegations. When defense counsel asked Conaway if she knew "Mr. Tomme, Curtis Tomme, the DA," she said yes, but not at the time she made her complaint. We do not believe that evidence of a professional relationship with the district attorney's office shows that the district attorney had a bias in prosecuting Appellant. We have also reviewed the record in its entirety and have not found any evidence that the trial court was biased, nor has Appellant directed us to anything in the record to suggest that the trial court was biased. Therefore, because there is nothing in the record to support either a change of venue or recusal of the trial judge, Appellant has failed to show that counsel's representation fell below an objective standard of reasonableness on these grounds.

Appellant also argues that defense counsel was ineffective because he failed to request discovery. Appellant contends that this deficiency prevented him from examining the prosecution's evidence and from making objections at trial. However, Appellant does not specify what evidence should have been objected to, what evidence should have been presented, or what other problems were caused by the failure to request discovery.[1] The State concedes that defense counsel failed to

---

[1]We note that, although Appellant filed a motion for new trial and attached his affidavit in which he stated that he purchased the cabinets within thirty days of receiving the $2,000 check, Appellant did not claim in his motion that trial counsel rendered ineffective assistance by failing to discover or present this testimony during trial, nor did Appellant raise this specific ground on appeal.

discover an extraneous act that was admitted through Appellant's videotaped interview with police, but the State argues that Appellant has not shown that there is a reasonable probability that the result would have been different but for its admission.

When the State offered the video of Appellant's interview with police, defense counsel stated he had no objection, and the trial court admitted the video. The State played the video, and during the middle of the video, defense counsel objected to the video on the ground that Appellant was being questioned on a different allegation than the allegation currently before the court. Defense counsel admitted that he had not seen the video but had assumed, based on the sponsoring testimony, that the interview dealt only with the indicted offense. The trial court overruled the objection and agreed with the State that it had already admitted the video in its entirety. The other allegation that police questioned Appellant about concerned whether Appellant took an air compressor and a sawzall from another job. During the interview, Appellant denied the allegation and explained that he believed that one of his workers took the air compressor, along with several of Appellant's things, before leaving the state. He did not know anything about the sawzall and stated that he never saw the sawzall at the job site. The State did not present any witness to testify about this allegation, and defense counsel established that no charges had been filed against Appellant.

Even if defense counsel's failure to discover the extraneous act constituted deficient performance, Appellant has not shown that there is a reasonable probability that the result would have been different but for counsel's failure to object to its admission. *See Strickland*, 466 U.S. at 687. The video did not show that Appellant took equipment from another job, nor did Appellant admit that he took the equipment. The video shows only an allegation of theft. The State did not present the complaining witness, nor did any party discuss the allegation in closing

9

arguments. We also note that we did not find this evidence probative of Appellant's intent to not perform when we conducted our sufficiency review. Appellant's second issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


June 25, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.