ACCEPTED
06-15-00077-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/14/2015 4:00:02 PM
DEBBIE AUTREY
CLERK

No. 06-15-00077-CR

IN THE

SIXTH COURT OF APPEALS

at Texarkana

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
9/15/2015 8:03:00 AM
DEBBIE AUTREY
Clerk

———

**ANTHONY SCOTT ROPER, Appellant V. THE STATE OF TEXAS,**

**Appellee**

———

Appealed from the 276th Judicial District Court of

Titus County, Texas

No. 16,480

---

**APPELLEE'S BRIEF**

---

**David Colley**
**Texas Bar No. 24007027**
**Titus County Assistant District Attorney**
**P.O. Box 249**
**Mt. Pleasant, TX 75456**
**Phone: (903) 577-6726**
**Fax: (903) 577-6729**
**Email: adacolley@hotmail.com**

**ATTORNEY FOR APPELLEE**
**The State of Texas**

## IDENTITY OF PARTIES & COUNSEL

The State of Texas, Appellee, adopts Appellant's list of parties and counsel with the exception of Appellee's counsel, designated below:

Appellee, The State of Texas, is represented by:

David Colley, Assistant District Attorney
Titus County Courthouse, Annex
100 West 1st
P.O. Box 249
Mt. Pleasant, TX 75456
Phone: (903) 577-6726
Fax: (903) 577-6729
Attorney for State of Texas
Email: adacolley@hotmail.com

In this brief, Appellee will be referred to as "the State." ANTHONY SCOTT ROPER will be referred to as "Roper" or "Appellant."

The Statement of Facts in the Reporter's Record will be referred to as "RR."

"CR" will designate references to the Clerk's Record.

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL.....................................................................2

TABLE OF CONTENTS..........................................................................................3

INDEX OF AUTHORITIES......................................................................................5

STATEMENT OF THE CASE..................................................................................7

STATEMENT REGARDING ORAL ARGUMENT..............................................7

ISSUES PRESENTED..............................................................................................8

STATEMENT OF FACTS........................................................................................9

SUMMARY OF THE ARGUMENT......................................................................14

ARGUMENT...........................................................................................................16

      STANDARD OF REVIEW...........................................................................16

      **Issue 1:** **The Trial Court did not err is denying Roper's Motion to Transfer the adjudication hearing to the 76th DistrictCourt.**.......................................................17

      **Issue 2:** **The Due-Diligence Defense of Article 42.12 section 24 of the Texas Code of Criminal Procedure does not apply to revocations occurring within the term of probation or in situations where the warrant on the motion to revoke/adjudicate was promptly served.**...20

        2.A.   THE 42.12 SEC. 24 DUE-DILIGENCE DEFENSE DOES NOT APPLY TO REVOCATIONS WHICH ARE CONCLUDED DURING THE DEFENDANT'S TERM OF PROBATION......................................................20

2.B.   THE PROBATION OFFICER ATTEMPTED TO CONTACT ROPER WHEN ROPER DID NOT REPORT.................................................23

2.C.   ANY LACK-OF-DUE-DILIGENCE DEFENSE IS NOT AVAILABLE FOR THE FAILURE TO PAY ALLEGATIONS.........................................25

**Issue 3:**   **The Trial Court did not abuse its discretion by finding that Roper failed to pay court-ordered fines and/or that he was able to pay court costs and fees.**.27

3.A.   THE STATE DOES NOT HAVE THE BURDEN TO SHOW A DEFENDANT'S ABILITY TO PAY FINES AND RESTITUTION.....................27

3.B.   ROPER HAD THE ABILITY TO PAY..............28

CONCLUSION................................................................................31

PRAYER.........................................................................................33

CERTIFICATE OF COMPLIANCE....................................................33

CERTIFICATE OF SERVICE............................................................34

# INDEX OF AUTHORITIES

## CASES

1.    *Bearden v. Georgia*, 461 U.S. 660 (1983)......................................................29

2.    *Cardona v. State*, 665 S.W.2d 492 (Tex. Crim. App. 1984)........................16

3.    *Cobb v. State*, 851 S.W.2d 871 (Tex. Crim. App. 1993).............................16

4.    *Connolly v. State*, 983 S.W.2d 738 (Tex. Crim. App. 1999).......................20

5.    *Davila v. State*, 651 S.W.2d 797 (Tex. Crim. App. 1983)......................17, 18

6.    *Garcia v. State*, 387 S.W.3d 20 (Tex. Crim. App. 2012)...........16, 20, 25, 26

7.    *Gipson v. State*, 428 S.W.3d 107 (Tex. Crim. App. 2014)..........................27

8.    *Lively v. State*, 338 S.W.3d 140 (Tex. App.—Texarkana
2011, no pet.).................................................................................................16, 29

9.    *Mattias v. State*, 731 S.W.2d 936 (Tex. Crim. App. 1987)..........................16

10.   *Peacock v. State*, 77 S.W.3d 285 (Tex. Crim. App. 2002).....................20, 21

11.   *Rickels v. State*, 202 S.W.3d 759 (Tex. Crim. App. 2006).........................16

12.   *Rodriguez v. State*, 804 S.W.2d 516 (Tex. Crim. App. 1991).....................20

13.   *Thomas v. State*, 379 S.W.3d 436 (Tex. App.—Amarillo
2012, no pet.).......................................................................................................16

14.   *Wheat v. State*, 165 S.W.3d 802 (Tex. App.—Texarkana
2005, pet. dism'd)................................................................................................20

15.   *Wise v. State*, 477 S.W.2d 578 (Tex. Crim. App. 1972).............................18

## STATUTES AND CODES

1.      Tex. Code Crim. Proc. art. 42.12 sec. 5(b)......................................................16

2.      Tex. Code Crim. Proc. art 42.12 sec. 10(a)....................................................17

3.      Tex. Code Crim. Proc. art. 42.12 sec. 21(c).....................................15, 27, 29

4.      Tex. Code Crim. Proc. art 42.12 sec. 24.......................3, 8, 14, 20, 21, 22, 25

5.      Tex. Gov't Code sec. 24.178(d)..............................................................18, 19

6.      Tex. R. App. P. 9.4(i)(3)...............................................................................33

## CONSTITUTION

1.      Tex. Const. art. V sec. 11.............................................................................18

## STATEMENT OF THE CASE

Roper appeals the Trial Court's grant of the State's Motion to Adjudicate. CR 47. He was placed on deferred adjudication for five (5) years on September 7, 2010 for the offense of Failure to Register as a Sex Offender. CR 18 - 19. On April 24, 2015 the State's Motion to Adjudicate was heard. RR V 1 P 1. The Trial Court proceeded to adjudication and sentenced Roper to three (3) years confinement in the Texas Department of Criminal Justice. CR 53 - 55.

## STATEMENT REGARDING ORAL ARGUMENT

The State waives oral argument.

## ISSUE PRESENTED FOR REVIEW

**Issue 1:**      **The Trial Court did not err is denying Roper's Motion to Transfer the adjudication hearing to the 76th District Court.**

**Issue 2:**      **The Due-Diligence Defense of Article 42.12 section 24 of the Texas Code of Criminal Procedure does not apply to revocations occurring within the term of probation or in situations where the warrant on the motion to revoke/adjudicate was promptly served.**

**Issue 3:**      **The Trial Court did not abuse its discretion by finding that Roper failed to pay court-ordered fines and/or that he was able to pay court costs and fees.**

## STATEMENT OF FACTS

Anthony Scott Roper was placed on deferred adjudication on September 7, 2010 for the offense of Failure to Register as a Sex Offender. CR 18 - 20. The order was entered by the then presiding judge of the 76th Judicial District, Jimmy L. White. CR 18 - 19. The term of deferred adjudication was five years. CR 18. Among other conditions of community supervision, Roper was required to report to his probation officer each month and pay costs, fines and fees. CR 27 - 30. On January 21, 2015, within the term of probation, the State filed its motion to adjudicate the unadjudicated offense. CR 31 - 33. That same day the court issued a capias for Roper's arrest. CR 34. Roper was arrested on the warrant on January 30, 2015. CR 36. The State's motion alleged that Roper violated the conditions of his probation by failing to report to his probation officer for the months of March, April and September of 2013 and by failing to pay court-ordered fees and probation service fees from February, 2013 through January, 2015, when the motion was filed. CR 31 - 33. The hearing on the State's motion to adjudicate was held on April 24, 2015. CR 63. Judge Robert Rolston of the 267th Judicial District presided over the hearing on the State's motion to adjudicate. RR V 1 P 1.

Roper filed a Motion to Transfer the adjudication hearing to the 76th Judicial District. CR 45 - 46. Judge Rolston denied Roper's motion. CR 49. In doing so, he

said, ". . . I think it's pretty well common knowledge . . . that Judge Woodson and I have concurrent jurisdiction. We had jurisdiction on all cases. We handle each other's cases, handle the same criminal cases, and so I find that . . . your motion will be denied." RR V 1 P 5 L 3 - 9. The Trial Court found the allegations true and sentenced Roper to three years confinement. CR 53 - 55.

In the hearing on the motion to adjudicate Roper's deferred adjudication, the State called Rance Hockaday as its witness. RR V 1 P 8 L 1 - 12. Hockaday is a community supervision officer for Titus County, who supervises the sex offender case load and who supervised Anthony Roper. RR V 1 P 8 L 13 - P 9 L 7. Hockaday testified that Roper was currently on probation and was required to report monthly and to pay certain fees monthly among other conditions of probation. RR V 1 P 9 L 15 - 22; V 1 P 10 L 1 - 5. Hockaday further testified that Roper did not report to the probation department in March, April or September of 2013. RR V 1 P 9 L 23 - 25. Nor did Roper pay the court-ordered thirty-two dollars ($32.00) a month or the sixty dollars ($60.00) a month for probation service fees for the months of February, March, April, May, June, July, August, September, October, November, December of 2013; January, February, March, April, May, June, July, August, September, October, November, December of 2014; and January of 2015. RR V 1 P 10 L 1 - 14. Hockaday testified that Roper

had not been employed for a little over two years, and at the last home visit Hockaday found Roper looking as if he had just woken up at 2:30 or 3:00 in the afternoon. RR V 1 P 10 L 21 - P 11 L 5. That last home visit was in December of 2014. RR V 1 P 11 L 3 - 11.

On cross-examination Hockaday testified that he did not make a home visit to Roper in March or April of 2013 but did contact him in May. RR V 1 P 12 L 5 - 15. Hockaday visited Roper's residence in October of 2013 after Roper did not report in September. RR V 1 P 12 L 16 - P 13 L 2. After the first two months that Roper did not report, Hockaday went to find him. RR V 1 P 18 L 10 - 12. Hockaday did not recall Roper giving any excuse for not reporting other than, perhaps, that he did not have a ride; Roper said nothing at that time about thinking that he was excused from reporting. RR V 1 P 18 L 3 - 14. Hockaday conducted home visits for Roper "just about every month." RR V 1 P 14 L 24 - P 15 L 1.

Hockaday testified that once Roper quit his job he did not have any income. RR V 1 P 16 L 14 - 15. Roper's excuse for not having a job was that his criminal history and COPD made it difficult for him to find a job. RR V 1 P 15 L 9 - 13. However, Roper never showed any proof or medical verification of a COPD diagnosis. RR V 1 P 15 L 14 - 19. About ninety-five percent (95%) of Hockaday's sex-offender case load is employed. RR V 1 P 16 L 22 - 25. Roper had been

employed at Pilgrim's for quite a while but was fired for getting into an argument with another employee. RR V 1 P 19 L 9 - 12. He then worked at Big Tex Trailers for a few months. RR V 1 P 19 L 9 - 12. He quit the job at Big Tex. RR V 1 P 19 L 3 - 6. In Hockaday's opinion, Roper was not looking very hard for a job. RR V 1 P 19 L 16 - 24.

Roper testified in his defense. RR V 1 P 20 L 24. He testified that in February, 2013, Hockaday told him to report by phone and in March he called and left a message. RR V 1 P 22 L 2 - 4. In April, Roper called the probation department and spoke to Hockaday by telephone and Hockaday "chewed [him] out" for not reporting. RR V 1 P 22 L 4 - 15.

Regarding his employment, Roper testified that he quit working at Big Tex because he thought he would be hired back at Pilgrim's, that he would be hired on once he filled out an application. RR V 1 P 23 L 11 - 15. According to Roper, after he quit working at Big Tex and went to Pilgrim's he discovered they no longer hired sex offenders. RR V 1 P 23 L 15 - 20. Roper had worked at Pilgrim's previously, for five years, with them knowing of his criminal history. RR V 1 P 23 L 21 - P 24 L 1. Roper testified that he went to the Texas Workforce Commission and that he tried to find jobs. RR V 1 P 24 L 22 - 25. The only specific employment he testified to trying to obtain was at Priefert's and by asking a local

attorney for employment based upon his experience in the prison law library. RR V 1 P 25 L 11 - 20, V 1 P 28 L 15 - 19.

On cross-examination, Roper admitted that he quit the Big Tex job before he even had another job. RR V 1 P 31 L 23 - 24. He also confirmed that in April of 2013, Hockaday made contact with him through another probationer whom he worked with at Big Tex, by telling him that Hockaday had asked about him. RR V 1 P 31 L 7 - 13. It was after that message was related to Roper that he called Hockaday. RR V 1 P 31 L 11 - 13.

On rebuttal, Hockaday testified that he made home visits for Roper in March and April of 2013 but that Roper was not present. RR V 1 P 34 L 21 - P 35 L 2.

## SUMMARY OF ARGUMENT

Issue 1: By statute, the 76th and 276th Judicial District Courts have concurrent jurisdiction. Likewise, district courts in multiple-court counties have been allowed to preside over the revocation of community supervisions that the other courts have ordered. The 276th Judicial District did not err by refusing to transfer the hearing on the motion to adjudicate against Roper to the 76th Judicial District.

Issue 2: The Due-Diligence Defense of Article 42.12 section 24 of the Texas Code of Criminal Procedure relates to the diligence of the State to serve a capias that has been issued and only on the conditions of failure to report and failure to remain within a certain location. Roper's argument attempts to equate the requirement to go to the defendant's residence to serve the capias to performing a home visit during the term of probation for the month that the probationer failed to report. Such an interpretation is incorrect. The Due-Diligence Defense does not apply to Roper's situation either because he was revoked during the term of his probation or because there are no allegations that the State failed to diligently execute the capias. Nevertheless, the evidence shows that the probation department continued to make home visits each month after the months Roper failed to report. The Trial Court would not have abused its discretion in finding

that Roper failed to prove the affirmative defense.

Issue 3: While Article 42.12 section 21(c) of the Texas Code of Criminal Procedure requires the State to prove that a defendant has the ability to pay before a court can revoke his probation for failure to pay court costs, supervision fees and other fees, that does not apply to fines and restitution. Part of what Roper failed to pay was his fine. In that regard, the State did not have to prove his ability to pay. Nevertheless, due to the facts that Roper paid no rent, had no bills, had worked before but quit his last job, the Trial Court would not have abused its discretion in finding that Roper had the ability to pay but failed to make bona fide efforts to seek employment or otherwise obtain the funds to pay.

# ARGUMENT

STANDARD OF REVIEW

The adjudication of guilt on a deferred adjudication is reviewed for abuse of discretion. Tex. Code Crim. Proc. art. 42.12 sec. 5(b); *Thomas v. State*, 379 S.W.3d 436,442 (Tex. App.—Amarillo 2012, no pet.). See *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The State must show by a preponderance of the evidence that the defendant violated a term of community supervision alleged in its motion to proceed to adjudication. See *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The evidence is viewed is the light most favorable to the ruling of the trial court. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The trial court is the sole judge of the witnesses, their credibility and the weight to be given to their testimony and may accept or reject any or all of a witness's testimony. *Lively v. State*, 338 S.W.3d 140, 145-46 (Tex. App.—Texarkana 2011, no pet.), citing *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987). If a single ground of the revocation is supported by a preponderance of the evidence, then the trial court did not abuse its discretion. See *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012); *Lively*, 338 S.W.3d at 142.

**Issue 1:** **The Trial Court did not err is denying Roper's Motion to Transfer the adjudication hearing to the 76ᵗʰ District Court.**

Roper moved for transfer of the adjudication hearing to the 76ᵗʰ Judicial District because Judge Rolston was not the judge of the court where Roper entered his plea originally. CR 45. For his motion, he relied upon Article 42.12 section 10(a) of the Texas Code of Criminal Procedure, which reads, in relevant part, as follows:

> Sec. 10.(a) Only the court in which the defendant was tried may grant community supervision, impose conditions, revoke the community supervision, or discharge the defendant, unless the judge has transferred jurisdiction of the case to another court with the latter's consent.

The Trial Court denied Roper's motion. CR 49. In doing so, the Trial Court commented that he and Judge Woodson have concurrent jurisdiction on all cases and routinely handle the same criminal cases. RR V 1 P 5 L 3 - 9.

In *Davila v. State*, the defendant was placed on probation by the 72ⁿᵈ District Court. 651 S.W.2d 797, 798 (Tex. Crim. App. 1983). The motion to revoke his probation was heard by the 237ᵗʰ District Court. *Id*. An order transferring the case to the 237ᵗʰ District Court was dated the day of trial of the motion to revoke but not filed until a week-and-a-half later. *Id*. at 799. The Court

held that even if the transfer order was not valid, the judges could exchange benches as allowed by Article V, section 11 of the Texas Constitution, which provides for district judges to exchange districts or hold courts for each other when they deem it expedient. *Id*. The Court further noted that for a district court to preside over a case in place of another court, no order or docket sheet entry showing the reason for the exchange of the benches is necessary. *Id*.

In *Wise v. State*, the defendant was placed on probation by the judge of the 30th Judicial District and revoked by the judge of the 89th Judicial District, both of Wichita County. 477 S.W.2d 578, 579-80 (Tex. Crim. App. 1972). Relying on a letter in the record from the presiding judge of the administrative district which indicated that the district judges of Wichita County were assigned to each other's cases, the Court held that, for practical purposes, the regular judge of the 89th Judicial District was the regular judge of the 30th Judicial District as well. *Id*. at 580.

The concurrent jurisdiction between the 76th and 276th Judicial District Courts is confirmed in the statutes creating the courts. Section 24.178(d) of the Texas Government Code states as follows:

> (d) In Camp, Morris, and Titus counties, the 76th District Court has concurrent jurisdiction with the 276th District Court. The judges of the

courts may transfer any case to be tried in Camp County, Morris County, or Titus County with the consent of the court to which the case is being transferred. Each judge may sit in the other court without transferring the case.

It is this concurrent jurisdiction that was exercised when Judge Rolston presided over the motion to adjudicate, which was originally ordered in the 76th Judicial District by Judge White. The statute provides for the flexibility that is necessary for the timely resolution of cases in counties, like Titus County, where the District Judges share jurisdiction and are responsible for multiple counties. The Trial Court did not err in denying Roper's Motion to Transfer.

**Issue 2:** **The Due-Diligence Defense of Article 42.12 section 24 of the Texas Code of Criminal Procedure does not apply to revocations occurring within the term of probation or in situations where the warrant on the motion to revoke/adjudicate was promptly served.**

2.A.   THE 42.12 SEC. 24 DUE-DILIGENCE DEFENSE DOES NOT APPLY TO

REVOCATIONS WHICH ARE CONCLUDED DURING THE

DEFENDANT'S TERM OF PROBATION.

In 2003, the Legislature limited the due diligence defense for revocations. See *Wheat v. State*, 165 S.W.3d 802, 805 (Tex. App.—Texarkana 2005, pet. dism'd). Before the amendments, a trial court did not have jurisdiction to revoke a community supervision unless the motion was filed and the capias issued before the community supervision expired and the State exercised diligence in having the revocation hearing. *Peacock v. State*, 77 S.W.3d 285, 287-88 (Tex. Crim. App. 2002). The State's failure to execute the capias with due diligence was a defense. *Connolly v. State*, 983 S.W.2d 738, 741 (Tex. Crim. App. 1999). Once the defendant raised the issue, the State would have the burden to prove diligence. *Rodriguez v. State*, 804 S.W.2d 516, 517-18 (Tex. Crim. App. 1991). This common-law requirement that the State diligently pursue the prosecution of a motion to revoke community supervision has been replaced by Article 42.12 Section 24 of the Texas Code of Criminal Procedure (hereinafter referred to as the

"Due-Diligence Defense"). *Garcia v. State*, 387 S.W.3d 20, 20-21 (Tex. Crim. App. 2012).

The common-law defense dealt with the court's continuing jurisdiction. See *Peacock v. State*, 77 S.W.3d 285, 288-89 (Tex. Crim. App. 2002) *overruling recognized by Garcia v. State*, 387 S.W.3d 20 (Tex. Crim. App. 2012). It required that the State show that the court retained jurisdiction to revoke a defendant's community supervision when the term of probation had expired. See *Garcia*, 387 S.W.3d at 22. The codification of the defense limited what existed at common law. See *Garcia,* 387 S.W.3d at 25. It did not create a new defense, or expand the old one, based on whether or not the probation department conducted monthly home visits during the probation term. The affirmative defense of Article 42.12 Section 24 of the Texas Code of Criminal Procedure is not applicable as a defense to a revocation when that revocation occurs during the term of probation.

If it is too broad to conclude that the Due-Diligence Defense is not applicable in any revocation occurring before the expiration of the term of probation, at the very least it is only applicable to the efforts made to execute the issued capias on the motion to revoke. The statute states, ". . . supervision officer, peace officer, or other officer with the power of arrest **under a warrant issued** by a judge **for that alleged violation** failed to contact or attempt to contact the

defendant in person at the defendant's last known residence address or last known employment address, . . ." Tex. Code Crim. Proc. art 42.12 sec. 24. The plain language of the statute addresses the State's diligence in executing the warrant which had been issued for a motion to revoke probation based on the ground of failure to report. It does not require a probation officer to attempt to contact the probationer to inquire as to why he did not report. It includes peace officers and others with the power to arrest under the warrant issued. See *id*. For the Due-Diligence Defense statute to require a peace officer to make a home visit during the term of probation is nonsensical. Roper's argument assumes that the Due-Diligence defense prevents a revocation on these allegations if the probation officer fails to conduct a home visit on the month that the probationer missed reporting. Roper's argument is misplaced in that regard. The Due-Diligence Defense of Article 42.12 section 24 of the Texas Code of Criminal Procedure is not applicable to the adjudication of Roper's deferred because there are no allegations, or evidence to support a claim, that the State failed to diligently pursue execution of the capias issued for Roper's arrest.

2.B.   THE PROBATION OFFICER ATTEMPTED TO CONTACT ROPER WHEN ROPER DID NOT REPORT.

Even if Article 42.12 Section 24 of the Texas Code of Criminal Procedure applies as Roper argues, there is evidence to support a finding that Roper's probation officer did make visits to Roper's residence. Probation officer, Rance Hockaday testified on cross-examination as follows:

Q: What happened on March of 2013?

A: He failed to report.

Q: Did you contact him then?

A: I do not believe I attempted a home visit when he did not report, no, sir.

Q: What about April?

A: March or April, no, sir. I did contact him then in May.

Q: So it was not until May of '13 that you tried to contact him?

A: Yes, sir.

Q: Then again in September of 2013, you stated that he failed to report?

A: Yes.

Q: What are the circumstances of that?

A: He just did not report that month.

Q: Did you contact him?

A: Not that month. I did the following month and got him in.

Q: How did you contact him then?

A: I believe I went by his house. His apartment.

Q: The following month, you're referring to October?

A: Yes, sir.

. . .

Q: How many times do you think you went by to see if Anthony way home?

A: I did a home visit just about every month on him.

. . .

A: The first two months that he didn't report, I never heard from him those two months. Then I went out to find him. . . .

. . .

Q. . . . Did you go do like it says in Section 24 of the Community Supervision part of the Code? Did you go out there and look at him and tell him we need to reschedule you---

A. Not to his job. I did go by his house, but apparently he was working, and the home visits I did, he was not available for those two months.

. . .

Q. Did you go more than once to his house? . . .

A. I went each month.

Q. I mean for one month. You said you went by his house when you knew he was at work?

A. I went by his house. I left a card on the door.

RR V 1 P 12 L 5 - P 13 L 2, V 1 P 14 L 24 - P 15 L 1, V 1 P 18 L 10 - 12, V 1 P 34 L 21 - P 35 L 2, V 1 P 35 L 15 - 20.

There is some evidence that probation officer Rance Hockaday did attempt to contact, and did contact, Roper at his home at a time after the months he failed to report. If that was all the statute required then Roper failed to prove the defense.

2.C. ANY LACK-OF-DUE-DILIGENCE DEFENSE IS NOT AVAILABLE FOR THE FAILURE TO PAY ALLEGATIONS.

If the Court were to find that the due diligence statute applies as Roper argues, it does not apply to the failure to pay allegations. The defense in Section 24 of Article 42.12 of the Texas Code of Criminal Procedure does not apply to revocations based on allegations other than failure to report and failure to remain within a specified place. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). Even if the defendant proved the due diligence affirmative defense, the trial court's order adjudicating guilt may still be affirmed if it could have found by a

preponderance of the evidence that Roper violated the terms of his deferred

adjudication by failing to pay as he was ordered and as is argued below. See *id.*

**Issue 3:** The Trial Court did not abuse its discretion by finding that Roper failed to pay court-ordered fines and/or that he was able to pay court costs and fees.

**3.A.** THE STATE DOES NOT HAVE THE BURDEN TO SHOW A DEFENDANT'S ABILITY TO PAY FINES AND RESTITUTION.

Section 21(c) of Article 42.12 of the Texas Code of Criminal Procedure requires the State to prove that the defendant was able to pay and did not pay as ordered by the court in order to revoke a probation based on failure to pay attorney's fees, community supervision fees and court costs. This requirement does not apply to fines and restitution. *Gipson v. State*, 428 S.W.3d 107, 108-09 (Tex. Crim. App. 2014). Fines were included in the amount Roper failed to pay. CR 40 - 41.

When Roper was placed on deferred adjudication he was assessed a fine of $1500. CR 18 - 19. He was ordered to pay that fine as a condition of his probation. CR 27 - 30. The $32.00 per month, which Roper was ordered to pay, included the fine. CR 28. Roper failed to pay the $32.00 per month as ordered. RR V 1 P 10 L 1 - 14. As it was included in the $32.00 per month, Roper necessarily failed to pay the $1500 fine as ordered. The State was not required to prove Roper's ability to pay the court-ordered fine. See *id*. Regardless of his ability, the Trial Court could have found that Roper failed to pay the fine as ordered and adjudicated his

deferred adjudication on that ground.

3.B.   ROPER HAD THE ABILITY TO PAY.

In a revocation of community supervision for failure to pay court-ordered attorney fees, community supervision fees, or court costs, the state must prove by a preponderance of the evidence that the defendant was able to pay and did not so pay. Tex. Code Crim. Proc. art. 42.12 sec 21(c). The evidence before the trial court is that at various times Roper worked for Priefert Manufacturing, Pilgrim's Pride and Big Tex Trailers. RR V 1 P 19 L 3 - 12; P 28 L 16 - 18. He had a criminal history when he worked at Pilgrim's. RR V 1 P 23 L 21 - 24. He quit the job at Big Tex. RR V 1 P 19 L 6. Though he said he thought he had a job ready at Pilgrim's before he quit Big Tex, he had not even filled out an application at Pilgrim's. RR V 1 P 23 L 11 - 15. Of Hockaday's sex offender case load, about ninety-five percent of them are employed. RR V 1 P 16 L 22 - 25. Roper lived at a friend's apartment; the friend paid for Roper's food and did not charge him rent. RR V 1 P 26 L 5 - 7. The last home visit Hockaday made on Roper, Hockaday found him asleep at 2:30 in the afternoon. RR V 1 P 19 L 13 - 15. In Hockaday's opinion, Roper was not really looking for a job. RR V 1 P 19 L 17 - 19. Based on these facts, the Trial Court could have found that Roper had the ability to work and to

pay but did not make a bona fide effort to do so. See *Lively v. State*, 338 S.W.3d 140, 146 (Tex. App.—Texarkana 2011, no pet.)(affirming trial court's revocation on allegations of failure to pay fines, restitution and court costs when the trial court could have found that Lively failed to make a bona fide effort to acquire resources to pay or find employment).

In *Lively v. State*, the Court considered whether the defendant's failure to pay restitution and court-ordered fines was willful. 338 S.W.3d 140, 145-46 (applying *Bearden v. Georgia*, 461 U.S. 660 (1983), even though not specifically included as part of the State's burden of proof under Article 42.12 section 21(c) of the Texas Code of Criminal Procedure and holding that the trial court must consider if the probationer willfully refused to pay or failed to make sufficient efforts to obtain resources to pay fines and restitution). The Court found that the trial court could have rejected the defendant's testimony that he did not have the ability to pay, especially in light of his ability to pay a large sum previously and that he lived in low-income housing. *Id*. at 146. The trial court could have found that the defendant failed to make real efforts to acquire the resources to pay because he did not seek employment in his field of experience or elsewhere. *Id*.

In Roper's case, the Trial Court could have disbelieved Roper's testimony that he could not find employment. He had been employed at several places. He

quit his latest job. While he testified that he quit Big Tex because he thought he was going back to work at Pilgrim's, he had not even put in an application at Pilgrim's. He did not have to pay for rent or food and the last time Hockaday made a home visit, it appeared Roper was asleep at 2:30 in the afternoon. The Trial Court could have found that Roper had the ability to pay but failed to seek employment or make a bona fide effort to acquire resources to pay.

CONCLUSION

The Trial Court did not err in denying Roper's motion to transfer the hearing of the State's Motion to Adjudicate. By statute, the 76th and 276th Judicial Districts have concurrent jurisdiction and can hear each other's cases.

Roper failed to report to the probation department for the months of March, April and September of 2013. The Due-Diligence Defense applies to the State's efforts in serving the capias issued for those violations. It does not require the probation department to make a home visit on the probationer on the month he does not report. Nevertheless, the probation department did make home visits to Roper's residence throughout the term of probation, including on months after the months Roper failed to report.

Part of what Roper failed to pay as a condition of his probation was fines. The State does not have to prove Roper's ability to pay fines as it does court costs, probation fees and attorney's fees. Still, the Trial Court could have found that Roper had the ability to pay and did not appear to be making bona fide efforts to obtain employment or otherwise acquire the proceeds in order to pay.

The Trial Court did not abuse its discretion in adjudicating the guilt of Anthony Roper. Based on the evidence before it, it could have found by a preponderance of the evidence that Anthony Roper violated one or more of the

conditions of his probation. The Trial Court's judgment should be affirmed.

## PRAYER

The State, therefore, prays that this Court affirm the trial court's judgment.

Respectfully submitted,

The State of Texas
Titus County District Attorney
P.O. Box 249
Mt. Pleasant, TX 75456
Phone: (903) 577-6726
Fax: (903) 577-6729

By: /s/ David Colley
David Colley
State Bar No. 24007027
Assistant District Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I hereby certify that, according to the computer program word count, Appellee's Brief contains 5,787 words. The brief is written in 14-point Times New Roman.

/s/ David Colley
David Colley

## CERTIFICATE OF SERVICE

This is to certify that on  September 14  , 2015, a true and correct copy of

the above and foregoing document was served on all counsel of record as

indicated below:

Mac Cobb
Attorney-at-Law
P.O. Box 1134
Mt. Pleasant, Texas 75456
Email: maccobblaw@yahoo.com
**VIA EMAIL**

　　　　　　　　　　　 /s/ David Colley
　　　　　　　　　　　 David Colley